61  201
37a  20

61  201
150  426
151  55

61  201
81a  444

## SAMUEL B. WALTON *et al.*

### *v.*

## J. D. DEVELING *et al.*

1. ELECTION—*injunction*—*disobedience.* Where the law authorizes an election to be called in a township to determine whether a majority are in favor of subscribing to the stock of a railroad company, and the election is called in pursuance to the requirements of the law, a court of equity has no power to restrain the officers from holding, or the people from voting, at such election. A writ of injunction issued in such a case is void, and the officers and people are not bound to obey it, as the court has no jurisdiction to issue the writ.

2. INJUNCTION—*contempt of court.* In such a case, the defendants are not liable to be punished for a contempt of court for disobedience to such a writ. The statute confers power upon the court to punish for a contempt "for disobeying its process, rules or orders issued or made conformably to law." And the court having no power to enjoin the holding of an election, an injunction issued for the purpose is not issued conformably to law, and is void.

3. OFFICERS—*legal duty.* Where the law plainly requires an officer to perform a duty, and he is not exceeding or abusing his powers, but fairly acting within the same, and a court issues a writ to restrain him from its performance, he must discharge his duty as prescribed by the law.

4. EQUITY—*jurisdiction*—*error.* Where the court has jurisdiction of the subject matter, but acts erroneously, then the person enjoined would be in contempt by disobeying the writ.

5. INJUNCTION—*dissolution*—*damages.* Where a writ of injunction issued in such a case, is dissolved, it is the duty of the court, on suggestions being filed by the defendants, to hear evidence and assess such damages as

the nature of the case may require. Nor does the fact that the writ of injunction was void, affect the right of the parties to recover damages. Parties have the same right to defend against a void, as a valid, writ.

APPEAL from the Circuit Court of Iroquois county; the Hon. CHARLES H. WOOD, Judge, presiding.

Mr. C. R. STARR, for the appellants.

Mr. WM. POTTER, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

Upon application to the master, a writ of injunction was issued to restrain appellants, who composed the board of election of the town, from holding an election in accordance with the statute, in reference to the subscription to the capital stock of a railroad company.

The allegations in the bill which seem to be relied upon in the argument are, that there had been a previous election upon a proposition to subscribe $50,000, and that the clerk of the town, upon the petition of ten legal voters, and tax payers, had unlawfully posted up notices that an election would be held to determine whether or not the electors of the town were in favor of subscribing $30,000 to the stock of the company.

The election was held in violation of the injunction, and appellants were fined for contempt, which consisted of the alleged disobedience of the process of the court.

There is no pretense that the special statute, by virtue of which the election was to be held, had not been fully complied with by a proper petition and due notice.

By the writ the clerk, supervisor, collector and assessor of the town, and all other persons therein, were enjoined from holding or participating in the election.

Two questions arise for consideration.

*First*—Had the court any jurisdiction over the subject matter, and authority to issue the writ?

*Second*—If it had not, was the alleged disobedience a contempt of the court?

The cases in which this remedial writ has been issued, are of almost endless variety, and yet there should be some limit to the exercise of this enormous power. In *Brown v. Newall*, 2 Myl. & Cr. 558, Lord COTTENHAM, in delivering the opinion, said, as to this power: "I am most unwilling to lay down any rule which should limit the power and discretion of the court as to the particular cases in which a special injunction should or should not be granted; but I have always felt—and since I have been upon the bench I have seen no reason to alter my opinion—that extreme danger attends the exercise of this part of the jurisdiction of the court, and that it is a jurisdiction to be exercised with extreme caution. It is absolutely necessary that the power should exist because there are cases in which it is indispensable; but I believe that, practically, it does as much injustice as it promotes justice, and it is, therefore, to be exercised with extreme caution."

The strong language of the learned chancellor applies with great force to the case at bar.

Section 10 of the act to incorporate the railroad company, prescribes that the clerk of the town, upon the presentation of a petition signed by ten citizens, legal voters and tax payers. of the township, shall post up notices of an election, which shall be conducted in the manner provided by law for the election of town officers. Private Laws 1869, 135.

The law referred to in section 10, requires that the electors shall meet at the time and place specified in the notice, choose a moderator, and proceed with the election; and that the town clerk shall be the clerk at the meeting.

An act of the same session of the legislature provides that the proper authorities may, after rejection, again submit to the electors a proposition to subscribe to the capital stock of any corporation, at their discretion. Sess. Laws 1869, 173.

Thus it will be seen that the rejection of the subscription is no bar to a subsequent election.

No fraud is charged in the bill, and it is not alleged that the act of incorporation is invalid and not obligatory upon the officers mentioned in it.

The charter of the railroad company made it the duty of the clerk, upon request, to submit the question of subscribing to the stock to the voters; but when we construe it in connection with the other act, having reference to the same subject, we find that he is released from the positive duty and must exercise a discretion.

There is no charge of the exercise of an unreasonable discretion, or of non-compliance with the law.

In such case, what must control the officer, the mandate of the court, or the plain behests of the law? The court, as well as the inferior officer, must be governed by the law. When the law imposes a positive duty upon a public functionary and a court commands him not to perform it, he must obey the law and disobey the writ of the court. If the law give him a discretion in the discharge of a public duty, the implication is that he must act without other control than his own judgment. Upon the allegations in the bill, there could be no power or jurisdiction in the court to review or restrain the discretion. If so, there would be no discretion. The officer, and not the court, must discern and determine the propriety of the election.

In *Mooers* v. *Smedley*, 6 Johns. Ch. 28, a bill was filed to enjoin the supervisors of a town from the allowance of certain bounties for wolf scalps to non-residents of the town, and alleging that the bounties were confined to residents, and that, by such action of the supervisors, the tax of the plaintiff was greatly augmented.

The law gave the supervisors authority "to examine, settle and allow all accounts, etc."

Chancellor KENT said: "I can not find, by any statute, or precedent or practice, that it belongs to the jurisdiction of chancery, as a court of equity, to review and control the determination of the board. * * This power implied and

required the exercise of sound judgment.  *  *  This is not the case of a private trust, but the official act of a political body ; and in the whole history of the English court of chancery there is no instance of the assertion of such jurisdiction as is now contended for."

In the case of *Frewin* v. *Lewis*, 4 Myl. & Cr. 249, it was held that the chancellor had no jurisdiction to exercise any power over the proceedings of the poor law commissioners unless they were departing from the power which the law had vested in them, or were assuming a power which the law did not give them.   The chancellor, in delivering the opinion of the court, used the following language: "So long as those functionaries strictly confine themselves within the exercise of those duties which are confided to them by the law, this court will not interfere.   The court will not interfere to see whether any alteration or regulation which they may direct, is good or bad," when there is no departure from, or abuse of, the powers granted.

The court had no right to control the discretion exercised in this case, but the writ was absolutely void.   The election proposed would have been an assemblage of the people for a lawful purpose, and for consultation for the common good.   It would have violated no law ; would have been no usurpation of authority, and would have been the exercise of a constitutional right.

The writ not only restrained the officers, but the electors—the people.

If a majority of the voters voted in favor of subscription, the making of it might be enjoined for good reasons, and the issue of bonds might be restrained for sufficient cause.

But the attempt to check the free expression of opinion—to forbid the peaceable assemblage of the people—to obstruct the freedom of elections—if successful, would result in the overthrow of all liberty regulated by law.   The mere effort to assume such power is dangerous to the rights of the citizen. If the courts can dictate to the officers of the people that they

shall not hold an election from fear of some imaginary wrong, then people and officers are entirely subservient to the courts, and the consequences are too fearful to contemplate.

The principle which would authorize the mighty mandate of a court of chancery, in this case, would justify it in every election to be held by the people, and thus the whole administration of the government might be obstructed and all power and authority placed at the footstool of the judge.

We are of opinion that the court had no jurisdiction to issue the writ, and that it is, therefore, null and void.

Was, then, the disobedience of the writ a contempt of the court?

Though the authorities are conflicting, this court has repeatedly held that an appeal lies from the judgment of the circuit court to the supreme court imposing a fine for contempt of the process of the court. *Stuart* v. *The People*, 3 Scam. 395 ; *Crook* v. *The People*, 16 Ill. 535 ; *Brown* v. *The People*, 19 Ill. 613 ; *Wightman* v. *Wightman*, 45 Ill. 167 ; *Winkelman* v. *The People*, 50 Ill. 449 ; *Winship* v. *The People*, 51 Ill. 296.

According to the statute, circuit courts have power to punish all contempts "for disobeying any of its process, rules or orders, issued or made conformably to law." The process must be issued in compliance with the law. Its vitality depends upon this. If the act enjoined is plainly and imperatively required by law to be performed by the officer, then the process forbidding it is not made "conformably to law."

In this case, the power to punish for contempt is only auxiliary and incidental to jurisdiction over the subject matter. As there was no jurisdiction of the matters alleged in the bill, the subsequent action of the court was extra-judicial and void. *Piper* v. *Pearson*, 2 Gray, 120 ; *Davis* v. *The Mayor of New York*, 1 Duer, 451 ; *Perry* v. *Mitchell*, 5 Denio, 537.

If, however, the court had acted within its powers and jurisdiction, although erroneously, the party would be in contempt for breach of the injunction.

There could, therefore, be no contempt, as there was no jurisdiction in this case.

The court erred in its refusal to hear proof upon the suggestion of damages for the issuance of the injunction. When the answer was filed, the court dissolved the injunction. The statute is imperative that, after dissolution, the court shall hear evidence and assess such damages as the nature of the case may require. Sess. Laws 1861, 133.

According to the view we have taken of the case, there was no disobedience of the writ, and all of the defendants could unite in the suggestion of damages.

Counsel for appellees assumes that, if the writ was void—if the court had no jurisdiction—then there was no necessity to defend, or for a motion to dissolve the injunction.

The bill was, in fact, pending, and the injunction had been issued. A party has an equal right to come into court to defend a void, as a valid writ.

The case of *Palmer* v. *The Board of Supervisors, etc.,* 46 Ill. 447, is not in point. In that case a mere temporary restraining order, for nine days, had been issued, until the application for the injunction could be heard. Upon the hearing, it was refused. This restraining order expired by its own limitation, and no order of the court was necessary for its dissolution.

In this case, the parties were liable to fine and imprisonment—they were under restraint until the court made an order to the contrary—and it was eminently proper that they should appear in court and make their defense.

It is ordered that the decree of the court dismissing the bill and dissolving the injunction, be affirmed.

It is further ordered that the judgment of the court, assessing a fine against appellants, be reversed, and that they be discharged of the alleged contempt. And it is further ordered that the court hear evidence upon the suggestion of damages, and the cause be remanded.

*Judgment reversed.*