COLMORE HARRIS *et al.*

*v.*

JOSEPH SCHRYOCK *et al.*

1. TOWNSHIP ORGANIZATION—*changing towns and forming a new one.* The proviso in the statute giving the board of supervisors power to form new towns, and to divide or enlarge towns, requiring a vote in case an incorporated town is to be divided, refers to incorporated towns and villages, and not to towns under the township organization law; and where no such incorporated town or village is to be divided, by any change of boundaries or the formation of a new town, no vote is required.

2. INJUNCTION—*holding of an election.* The power to hold an election is political and not judicial, and a court of equity has no jurisdiction to restrain officers from the exercise of such powers.

WRIT OF ERROR to the Circuit Court of Jasper county; the Hon. JAMES C. ALLEN, Judge, presiding.

. Mr. J. M. HONEY, Mr. D. B. BROWN, Mr. J. W. GIBSON, Mr. S. W. WISHARD, and Mr. H. B. DECIUS, for the plaintiffs in error.

Messrs. WILSON & HUTCHINSON, for the defendants in error.

. Mr. JUSTICE WALKER delivered the opinion of the Court:

The board of supervisors of Jasper county, on the 15th of January, 1875, made an order establishing a new township from territory taken from Ste. Marie township, in that county. The board appointed plaintiffs in error judges of election of the township thus created, for the choice of town officers. To prevent plaintiffs in error from performing their duty and holding the election this bill was filed, and a temporary injunction granted, restraining them from acting as such judges, until the consent of the people to such division should be obtained from the majority of the electors at an annual election in the original township. At the spring term, 1875, of the circuit court, a hearing was had, and the injunction rendered perpetual. To reverse that decree the record is brought to this court, and various errors have been assigned.

It is urged, that the whole question in the case turns upon the construction of the 26th section of the Township Organization Law (R. S. 1874, p. 1069.) The section confers ample power and jurisdiction upon the county board to alter the boundaries of towns, to change town lines, and to divide, enlarge and create new towns in their respective counties, to suit the convenience of the inhabitants residing therein. The section also provides for the amount of territory which the new town shall embrace, the number of voters it shall contain. for a petition to be presented, etc. To the section is added this proviso: " *Provided*, that no incorporated town shall be divided, except consent thereto is given by a majority of all the electors voting at a general election in said town—notice that

the question of dividing said town will be submitted to the legal voters thereof having been given by the county clerk at the same time and in the same manner as the notice of said general annual election."

The question presented is, where and by whom is the election to be had? Is it by the incorporated town or village, by the township as it was before the division, or by the electors in the territory proposed to be erected into a new township? This proviso is not free from obscurity and doubt as to the true meaning of the language employed. It seems to be obvious that the division of an incorporated town or village can not be had by changing township lines, by enlarging or dividing the township, or the creation of a new township, without the vote provided for by the proviso. The language employed seems to embrace each and every one of these contingencies.

Where the county board proposes to enlarge a township, two of these bodies are directly interested in the division, and yet, if the proviso was intended to embrace such a case, but one township would be embraced by the language of the proviso, and it would be unknown which, nor could we conjecture which was intended. And if the townships were intended to vote, it would have specified whether both or which one should consent to the enlargement. So of the change of the township lines.

Again, the townships are designated as towns, but the village is designated as an incorporated town by this section. The fact that this difference in the terms employed was used, would manifest a design to make a broad distinction of the subjects embraced by each. Whilst the word "town" is sometimes employed to designate a township, the term "incorporated town" is seldom, if ever, employed to embrace such a body. According to the canons of construction, ordinary terms must be held to have been used in their general and popular sense. We must, therefore, conclude that the proviso only requires an election held in case an incorporated town or village is to be divided by the alteration of the township line, the alteration, the division, or the formation of a new town-

ship.  And  the  words  " said town," employed  in  reference to
the election  and  notice, as used  in  the  proviso, must  be held
to apply to an incorporated town or village.    It then  follows,
that in such case the election can only be held  in the incorpo-
rated town or village.    It was the  design of  submitting  the
question  whether  the incorporated  town or village should  be
divided, to the voters of that municipality before the order of
the county board could become operative.    No such incorpo-
rated town having been divided by the order of the county
board in this case, no election was required to be held, and the
order of the board became operative by its own force.

We are fortified in this construction from the fact that, in
organizing townships, in the first place the inhabitants have
no right to vote, although fractional townships may be added
to others that are full, or a township not having a sufficient
number of  inhabitants may be divided and added to others.
It would, therefore, seem, that the General Assembly have
only provided that a vote shall be had when it is proposed to
divide an incorporated town or village, and that the voters
therein shall alone vote on the question of its division.

But, according to the repeated decisions of this court, the
power to hold an election is political and not judicial, hence a
court of equity has no power to restrain officers from the exer-
cise of such power.    See *The People* v. *The City of Galesburg,*
48 Ill. 485;  *Walton* v. *Develing,* 61 Ill. 201;  *Darst* v. *The
People,* 62 Ill. 306;  and *Dickey* v. *Reed et al.* 78 Ill. 261.
These cases fully establish this doctrine, and further discussion
of the rule is deemed wholly unnecessary, as we perceive no
reason to overrule, modify or change the rule.    We regard it
as firmly settled.

From what has been said, it will be seen that the court had
no jurisdiction to decree an injunction, and, had the power
existed, the decree rendered would have been erroneous, and it
must be reversed, and the bill dismissed.

*Decree reversed.*