*THE MURFREESBORO RAILROAD COMPANY AND JOHN H. WINDER v. THE BOARD OF COMMISSIONERS OF HERTFORD COUNTY.

*Constitution— Corporations— Election— Injunction.*

1. The provision in the Constitution (Art. 8, § 1) which reserves to the General Assembly the power to alter or repeal acts incorporating companies, does not authorize the enactment of a statute which, under the pretence of protecting a public interest, or exercising an acknowledged police power, appropriates the corporate property to the public use.

2. While the Courts have no power to enjoin municipal authorities from ordering an election in pursuance of a law to select officers, or to determine any question made dependent upon such election, nevertheless, where it is apparent that such election will be of no possible benefit to anyone, but may work irreparable injury to some, an injunction until the final hearing may be granted, particularly if the acts complained of have a tendency to prevent the construction of a railroad, or some other enterprise in which the public have an interest.

*CLARK, J., did not sit on the hearing of this case.

This was a MOTION to continue an injunction till the hearing of the cause, heard at CHAMBERS on the 20th day of January, 1891, before *Brown, J.*

Under the provisions of the original charter of the plaintiff company (sec. 34, ch. 365, Laws of 1887), it was required to begin the work of constructing its road within three years from the 7th of March, 1887 (when the act was ratified). At the election held in July, 1887, a majority of the qualified voters of Murfreesboro Township voted in favor of the subscription of twenty-five thousand dollars in bonds of the township to the capital stock of the company, and the bonds issued in payment of said subscription were declared valid by this Court in *Brown* v. *Commissioners.* 100 N. C., 92.

After causing two routes to be surveyed from the Meherrin river to the Roanoke and Tar River Railroad, the directors of the company located the line so as to intersect with the other road at a place called Pendleton Station. The directors had been empowered by the unanimous vote of the stockholders, at a regular meeting held October 8th, 1890, in which the stock of the township was lawfully represented, to make said location.

After expending large sums of money for the right-of-way along the line selected, the company contracted on the 5th of December, 1890, with its co-plaintiff, John H. Winder, to construct said road from said river to said station; and the said Winder agreed to take the said bonds in part payment of the work of construction, and notified the corporation of his readiness to begin the grading on the 1st day of January, 1891.

On the 9th of March, 1889, the General Assembly passed an act amending said charter (ch. 557, Laws of 1889), the material portions of which were as follows:

" Section 1. That section two of said chapter three hundred and sixty-five be amended by adding thereto the following clause: 'That said company *may extend the main* line of its

road from the town of Murfreesboro to some point on the line of the Norfolk and Carolina Railroad, in said county of Hertford, and the said company shall not be required to build that part of the main line of the road between the said town and the Roanoke and Tar River Railroad in order to entitle said company to the rights and privileges granted in said chapter.'

" Sec. 2. That the Commissioners of Hertford County are authorized, and it shall be their duty, whenever fifty tax-payers in said township shall petition the same, to cause an election to be held in said township, as prescribed in said chapter, and submit to the qualified voters of said township the question as to whether or not the bonds heretofore issued in payment of the subscription of said township to the capital stock of said Murfreesboro Railroad Company shall be used in building and constructing, or aiding in building and constructing, said railroad from said town to some point on the line of the Norfolk and Carolina Railroad. At such election, those in favor of the latter route shall deposit a ballot on which is written or printed the words, ' For Transfer;' and those opposed to same shall deposit a ballot on which is written or printed the words, ' Against Transfer.' And if, at such election, a majority of the qualified voters of said township shall vote 'for transfer,' *then the bonds heretofore issued for the subscription of said township* to the capital stock of said Murfreesboro Railroad Company shall be used and applied for the purpose of building and constructing, or aiding in building and constructing. that part of said railroad, provided for in section one of this act, from said town of Murfreesboro to said Norfolk and Carolina Railroad in Hertford County."

The seven concluding sections of the complaint, upon the hearing of which the orders complained of were granted, together with the said orders, were as follows:

12. That on the first Monday in November, 1890, A. M. Darden, E. Carl, J. E. Jones and other tax-payers in Murfreesboro township, numbering fifty or more, presented their petition to the Board of Commissioners of said county of Hertford in meeting assembled, asking for an election to be ordered by the Board under section 2 of said Act of 1889, and said Board refused to grant said petition and order said election.

13. That on the first Monday in December, 1890, said petitioners, together with others, numbering fifty or more, and tax-payers as aforesaid, again presented their said petition to said Board, the consideration of which was by said Board continued to the first Monday in January, 1891.

14. That the chairman of said Board is one of said petitioners in said matter, he having signed the petition before his qualification as Commissioner, but after his election, as plaintiffs are informed and believe.

15. That plaintiffs are informed and believe that a majority of the members of said Board intend, at their meeting on the first Monday in January, 1891, to grant said petition and order said election.

16. That plaintiffs are informed and believe that an election, if ordered under said Act of 1889, will greatly damage and lessen the value of said township bonds, and would irreparably damage plaintiffs.

17. That plaintiff Winder was negotiating with plaintiff company in reference to the construction of said railroad from some time in the month of October, 1890, until the consummation of their said contract of December 5th, 1890, and knew nothing of the above proceedings by the said petitioners until after the consummation of said contract, and about ten days ago.

Wherefore, the plaintiffs pray that defendant be restrained and enjoined from ordering an election under chapter 557 of the Laws of 1889, and for other relief as plaintiffs may be entitled, and for costs.

The Court, being of the opinion that the order of election referred to in the complaint ought not to be made, or the election be held, until the rights of the petitioners can be determined upon a final hearing, or until passed upon by the Supreme Court, ordered that the injunction theretofore issued be continued until the further order of the Court.

The defendant appealed.

*Messrs. J. W. Hinsdale* and *B. B. Winborne*, for plaintiffs.
*Mr. W. D. Pruden*, for defendant.

AVERY, J.—After stating the facts: The salutary provision of the Constitution (Art. 8, § 1), which reserves to the Legislature, the right to alter or repeal all acts incorporating companies, enacted thereafter, does not authorize the passage of a subsequent act, which, under the pretence of protecting the public or of exercising an acknowledged police power, appropriates a portion of the corporate property to the public use. Cooley's Con. Lim., Mar., pp. 577 and 578. The amendatory law under which the County Commissioners proposed to proceed would not be allowed, if by its terms it provided for perpetrating such a wrong, to operate so as to divest the right of the plaintiff company to the bonds or to compel it, against the protest of its directors, to do other and possibly much more costly work than it stipulated to do as a consideration for said bonds. But, in fact, the Legislature did not attempt a vain thing, but simply gave to the plaintiff company the power to extend its road in a new direction, and to be absolved from its obligation to construct a part of the line previously proposed, if the township, by a vote of its qualified electors, on its part should signify its assent to the new arrangement. The statute provides that "the company may extend its main line," &c., and therefore does not purport to compel, but only permits, the change to be made by agreement of both parties interested.

As a stimulus to diligence the company was required to begin work within three years from the 7th of March, 1887, and it seems that they had not only begun, but had made the necessary contracts looking to the completion of the entire line which the parties originally contemplated constructing, when, as the plaintiffs insist, the defendants proposed to take a step that would for the time destroy the market value of the bonds in which the plaintiff Winder was to be paid for the construction, and thereby cause a suspension of operations on his part. The holding of the election would obviously be productive of no benefit or profit to the people of the township, since the company has already agreed, as it had the right to do, with a contractor to finish the original line. The township cannot possibly gain anything by submitting the question of transferring a subscription, which cannot be divested from application to the original purpose for which it was made, and the expense of holding the election would be incurred without reasonable ground to expect any substantial advantage to the taxpayers in return for it.

Conceding that a Court of Equity has not the power to restrain the municipal authorities from ordering an election in pursuance of any provisions of law for the purpose of selecting officers or determining any question that may be settled by the result of such election, we think that a different rule prevails where, though the election may be lawfully held, it is apparent that no possible benefit will accrue from holding it to the persons at whose instance it is ordered, and where irreparable injury may be done to others who cannot be compensated in damages. Not only unlawful but improper acts of public officers may be restrained in order to prevent irreparable injury, when the relief can be manifestly granted without imperiling the rights or interests of the officer restrained or the public represented by him. 3 Pom. Eq. Jur., § 1345, p. 377 and

note 1.    While we do not hold that the plaintiffs can demand the extraordinary aid of a Court of Equity on the ground that the holding of the election will cast a cloud upon the right of the company to the bonds, we can see how the plaintiffs may be made to suffer by the temporary depreciation of those securities, and the work of construction of the railroad embarrassed or delayed, without the possibility that any corresponding benefit can accrue to the defendants or the county or township for which they are acting, by holding the election.    *Marshall* v. *Commissioners*, 89 N. C , 103; *McCorkle* v. *Brem*, 76 N. C., 407.    When no conceivable injury can be done by granting an injunction to the hearing, the courts are the more ready to interpose if the injury complained of has a tendency to embarrass or prevent the completion of a railroad or canal in which the public have an interest.    *Roanoke Nav. Co.* v. *Emry* (decided at this term).

We think that the judgment of the Court should be affirmed.

                                                          Affirmed.