THOMAS DUGGAN, *Appellant,* v. THE CITY OF EMPORIA, *Appellee.*

No. 17,432.

#### SYLLABUS BY THE COURT.

1. INJUNCTION—*Elections.* It is a principle of general application that courts will not enjoin the calling and holding of an election.

2. —— *Grounds for Injunction.* Injunction, being an extraordinary remedy, will not be granted unless it be made to appear to the satisfaction of a court of equity that some substantial and positive injury will occur; acts which, though irregular and unauthorized, can have no injurious result, constitute no ground for the relief.

3. —— *Elections—Irregularities.* Courts of equity will not enjoin the calling and holding of an election in a city of the second class under the initiative and referendum statute on the ground of alleged irregularities in the petition or because the proposed ordinance to be submitted to the electors purports to authorize the city to perform an act which it is claimed is *ultra vires.*

4. —— *Grounds—Moot Questions.* In a suit by an individual taxpayer of a city of the second class to enjoin the city from submitting to the qualified electors under the initiative and referendum statute a proposed ordinance authorizing the city to lease or sell its electric-light plant, the court will not anticipate conditions which may never arise, and since the people may not by their votes adopt the ordinance the court will not inquire into the validity of the proposed transaction.

Appeal from Lyon district court. Opinion filed March 11, 1911. Affirmed.

*W. A. Randolph,* for the appellant.

*J. Harvey Frith,* for the appellee; *Barker, Means & Rice,* of counsel.

The opinion of the court was delivered by

PORTER, J.: This is a suit to enjoin the calling and holding of an election under the initiative and referendum act as applied to cities of the second class. On

December 20, 1910, the judge of the district court refused a temporary injunction. The appeal is from this ruling.

The hearing was upon affidavits and upon the verified petition, no oral evidence being introduced. The facts are that the city of Emporia is a city of the second class and is governed by a commission. Shortly before this action was brought, a petition to the mayor and commissioners was filed with the city clerk asking that two proposed ordinances be submitted to a vote of the people, if not passed by the commissioners. One of these ordinances proposed to grant to certain persons a franchise for a street railway in the city of Emporia, and the other proposed to lease to the same parties for a term of twenty years, with an option in the lessees to purchase at any time during the term of the lease, at a certain agreed price, the electric-light and power plant owned by the city, which for a number of years had been used and operated by the city to light its streets and to furnish its inhabitants light and power.

The appellant contends that the court erred in refusing to grant a temporary injunction, for the following reasons: (1) The city of Emporia has no power to lease or sell its electric-light and power plant without direct legislative authority so to do. (2) The petition presented to the commissioners requesting the submission of the proposed ordinances was void for the reason that, at the time the petition was circulated and the names of electors procured thereto, the ordinances proposed were not attached to the petition, nor were they in existence. (3) One of the ordinances is void for the reason that it has no title. (4) Each of the ordinances is dependent on the other, and, one being void, the other is void. (5) The amount of the consideration for the leasing of the city's electric-light plant, as provided, is for a grossly inadequate sum, and the purchase price of $68,000, in case the

lessees, their successors or assigns, should elect to take the same, is much less than the actual value of the plant.

The initiative is a part of the act governing cities of the second class. (Laws 1909, ch. 82, §§ 31-37, Gen. Stat. 1909, §§ 1503-1509.) The particular provisions of the law which are applicable read as follow:

"Any proposed ordinance may be submitted to the board of commissioners by petition signed by electors of the city equal in number to the percentage hereinafter required. A petition signed by electors equal in number to at least forty per centum of the entire vote for all candidates for the office of mayor or commissioner cast at the last preceding general municipal election shall be filed with the city clerk. The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. One of the signers of each such paper shall make oath before an officer competent to administer oaths that the statements therein made are true, as he believes, and that each signature to the paper appended is the genuine signature of the person whose name it purports to be. If the petition accompanying the proposed ordinance be signed by electors equal in number to forty per centum of the votes cast for all candidates for mayor or commissioner at the last preceding general election, and contains a request that the said ordinance be submitted to a vote of the people if not passed by the board of commissioners, such board of commissioners shall either (a) pass such ordinance without alteration within twenty days after attachment of the clerk's certificate to the accompanying petition; or (b) forthwith after the clerk shall attach to the petition accompanying such ordinance his certificate of sufficiency the board of commissioners shall call a special election, unless a general municipal election is fixed within ninety days thereafter, and at such special or general municipal election, if one is so fixed, such ordinance shall be submitted without alteration to the vote of the electors of said city." (Laws 1909, ch. 82, § 31, Gen. Stat. 1909, § 1503.)

It is not disputed that the initiatory petition con-

sisted of thirty-six separate papers, each being verified as part of one petition; that tentative ordinances had been prepared and published in the Emporia *Gazette,* a daily paper; that amendments to the ordinances, made from time to time, were also published in the same paper; and that copies of the ordinances as printed were attached to the petition when it was presented to the commissioners. It will be observed that the statute expressly provides that "the signatures to the petition need not all be appended to one paper." Attached to the petition was a certificate from the city clerk that it contained the signatures of at least forty per cent of the qualified voters voting at the last preceding election. It was also shown that when the petition was presented certain verbal amendments were made, with the full knowledge and consent of the commissioners, and the title of one of the ordinances, which had been published but inadvertently omitted, was attached to the copy. The commissioners, with full knowledge of the facts, accepted the petition, and doubtless were satisfied that the signers of each separate paper understood that the paper itself did not constitute the petition, that it was merely a part of it, and that before it would be presented the petition would have attached to it copies of the proposed ordinances. It must be obvious that the objections based on the alleged irregularities in the circulation and signing of the petitions are entirely too technical to merit the consideration of a court.

There are, however, other reasons why the appellant's contentions can not be sustained: First, it is a principle of very general application that courts will not enjoin the calling and holding of an election; second, injunction, being an extraordinary remedy, will not be granted unless it be made to appear to the satisfaction of a court of equity that some substantial and positive injury will occur. Acts which, though irregu-

lar and unauthorized, can have no injurious result constitute no ground for the relief.

Taking up the first proposition, it may be observed that this court has never enjoined the calling or holding of an election, and we believe that this is the first instance where it has been asked to do so. In *The People ex rel. v. City of Galesburg*, 48 Ill. 485, it was said:

"We are aware of no well-considered case which has enjoined the holding of an election, or prevented an officer of the law from giving the required notices for, or the certificate of, election. To sanction the practice of granting temporary injunctions in such cases would be highly calculated to obstruct the various branches of government in the administration of public affairs. Courts of equity can have no such power, otherwise any and all elections might be prevented, and government greatly embarrassed." (p. 489.)

In *Walton et al. v. Develing et al.*, 61 Ill. 201, it was held that the court had no power to enjoin the holding of a township election to determine whether a majority of the voters were in favor of subscribing to the stock of a railroad company, and that the defendants, who had violated the order, were not liable for contempt of court for disobedience to the writ. In the opinion it was said:

"But the attempt to check the free expression of opinion—to forbid the peaceable assemblage of the people—to obstruct the freedom of elections—if successful, would result in the overthrow of all liberty regulated by law. The mere effort to assume such power is dangerous to the rights of the citizens. If the courts can dictate to the officers of the people that they shall not hold an election from fear of some imaginary wrong, then people and officers are entirely subservient to the courts, and the consequences are too fearful to contemplate.

"The principle which would authorize the mighty mandate of a court of chancery, in this case, would justify it in every election to be held by the people,

28—84 KAN.

and thus the whole administration of the government might be obstructed and all power and authority placed at the footstool of the judge." (p. 205.)

In the language of the supreme court of Pennsylvania:

"The power ought to be plain, indeed, to authorize courts to forbid municipal elections when ordered by the legislature. It is not plain, nor do we think it exists." (*Smith v. McCarthy,* 56 Pa. St. 359, 362.)

In *Weber v. Timlin,* 37 Minn. 274, it was held that an injunction will not lie to restrain county commissioners from ordering an election for the removal of a county seat, for the statute providing the mode for contesting elections furnishes a full remedy; and that the complaint did not make a case for an injunction notwithstanding the act of the legislature under which the election was about to be called was invalid.

In the opinion in *Lamb v. The B., C. R. & M. R. Co.,* 39 Iowa, 333, it was said, *obiter:*

"And further than this, without undertaking to decide the question, we simply state that we should hesitate long before adjudging that any court has the power or jurisdiction to enjoin an election to be held by the people pursuant to a public law. . . . The jurisdiction of any court, or of the whole judicial department of the government, to enjoin the expression of the popular will at a time and in the manner provided by statute, may well be doubted. If the election when held was not according to statute, or if the statute was enacted without any constitutional authority, the courts might very well hold the election invalid. But that is quite another thing from enjoining the people from peaceably assembling and casting their votes for or against any proposition submitted to them under the color of law." (p. 337.)

(To the same effect are: *Dickey et al. v. Reed et al.,* 78 Ill. 261; *Harris et al. v. Schryock et al.,* 82 Ill. 119; *Fletcher v. Tuttle,* 151 Ill. 41; *Morgan v. County Court,* 53 W. Va. 372; *Fesler, clerk, et al. v. Brayton,* 145 Ind. 71; *Roudanez v. the Mayor and Administrators of the*

*City of New Orleans,* 29 La. Ann. 271; *Guebelle et al. v. Epley et al.,* 1 Colo. App. 199; *Mendenhall et al. v. Denham et al.,* 35 Fla. 250; *Jones et al. v. Black et al.,* 48 Ala. 540; 2 High, Inj., 4th ed., § 1316; Paine, Elec. §§ 940, 941; 10 A. & E. Encycl. of L. 817; 22 Cyc. 885, 886.)

The following cases hold that where no public office is involved, and the election would be void and cause unnecessary expense, a taxpayer who would thereby be injured is entitled to an injunction: *Solomon v. Fleming,* 34 Neb. 40; *Cascaden v. City of Waterloo,* 106 Iowa, 673; *Mayor of Macon v. Hughes,* 110 Ga. 795. In the case last cited the supreme court of Georgia cites *Layton v. Mayor and Council et als.,* 50 La. Ann. 121, where it was held that equity would enjoin the holding of an unauthorized election called for the purpose of ascertaining the popular will on the proposed annexation of territory to the city. After citing the Louisiana case, the supreme court of Georgia said in the opinion:

"That this decision and the one we now make is against the weight of authority is perhaps true, but nevertheless we think it right on principle. An examination of many of the decisions will show, however, that they were dealing with elections which appeared to be authorized by law, and there were merely some irregularities in the manner in which they were called or were being conducted. In such cases we also agree that equity ought not to interfere." (110 Ga. 806.)

On the other hand, in *State ex rel. Cranmer v. Thorson,* 9 S. Dak. 149, which was an action brought to enjoin the secretary of state from certifying a joint resolution proposing an amendment to the constitution, the relator alleged that he would be injured as a taxpayer by the unnecessary expense, but it was said in the opinion that "any additional burden which might result to relator, as a taxpayer, by reason of submitting this question at a general election, is too trifling, fanci-

ful and speculative for serious consideration." (p. 153.)

It should be observed that many of the decisions cited holding that courts of equity will not enjoin an election are from courts where the distinctions between courts of law and equity are still preserved, and they proceed upon the theory that equity has no jurisdiction of matters which do not affect rights of property, and therefore will take no cognizance of injuries affecting mere political rights. All the cases, however, recognize the doctrine that courts ought not to interfere with the freedom of elections, from motives of public policy and because it would be an unwarranted interference with the other departments of government. Those courts where the distinction between legal and equitable remedies is preserved refuse an injunction for the purpose of affording any protection to political rights. Thus, in *Hardesty, et al. v. Taft, et al.*, 23 Md. 512, it was held that the power of a court of equity can not be invoked to restrain the fraudulent or corrupt refusal of a vote by the judge of an election or a similar refusal of the right of registration, for the reason that injuries to such rights can be adequately compensated in damages in an action at law. And such courts would refuse an injunction against the canvassing of the votes after an election, contrary to what was held in *The State, ex rel., v. Eggleston*, 34 Kan. 714. That was a county-seat case, and at the time the decision was rendered the present law was in existence providing for the contest of county-seat elections, and, as held in *The State v. Barton*, 58 Kan. 709, 711, the statute contemplates that such contest may be had after the election has been held, and "authorizes an inquiry into every preliminary step affecting the validity of the election, including the sufficiency of the petition. (Gen. Stat. 1889, § 2778.)" The particular ground upon which the court sustained the injunction was that the petition calling

for the election was insufficient, and in the opinion it was stated that the action was not brought under the provisions authorizing the contest of such elections. The case appears to stand in a class by itself. While the opinion has been cited in support of other propositions, the doctrine announced—that courts will enjoin the canvass of votes cast at an election—has not, so far as we are aware, been followed or approved.

In *Lawrence v. Leidigh,* 58 Kan. 676, followed and approved in *Wilder v. Underwood,* post, p. 441, a claimant to a public office, after bringing an action in quo warranto, sought to enjoin the payment of the salary of the office to the incumbent. The injunction was refused, and in the opinion it was said:

"Political questions involve matters of strict, often technical, legal right, and a court of equity, whose judgments are largely discretionary, and which always acts with respect to the conscience of cases, is therefore unsuited for the settlement of such controversies. Nor will it, in a proceeding auxiliary or incidental to the main action, lend its process in aid of either contestant if the object be to hold the functions of the office or the rights of the parties thereto in suspension." (58 Kan. 677.)

The controversy was over conflicting claims to an office, and it may be said that there is no provision for contesting an election like the one in the present case; but the legality of the election may be tested in proper proceedings after the election has been held.

While it is doubtless true that actions by mandamus and proceedings in quo warranto, together with the statutory provisions for contesting elections, will usually furnish adequate remedies for wrongs growing out of invalid elections, and that other appropriate actions exist for the protection of the rights of taxpayers after an election has been held, it is probable that cases respecting elections will occasionally arise where the remedy may be sought in a court of equity and before the election. The recent case of *The State v. Holcomb,*

83 Kan. 256, was an injunction to restrain the county clerk from placing on the ballot the name of a candidate for the office of district judge. The injunction was denied upon the merits, no question being raised as to the power of the court to grant the remedy. It was brought, however, in the name of the state, on the relation of the county attorney, and had the injunction been allowed it would not have interfered in any manner with the election being held at the regular time. Since the distinctions between courts of law and equity no longer exist here, and courts would not hesitate to compel by mandamus a county clerk to place the name of a candidate upon the ballot, no good reason appears why the same court should not, at the suit of proper parties and upon sufficient grounds, enjoin the clerk from placing the name of the candidate thereon. But we can not conceive of conditions where a court of equity would be justified in enjoining the calling and holding of an election, and certainly it should never be done for mere irregularities.

The point is not raised in the briefs that an action will not lie to enjoin the holding of an election, nor is there any suggestion that a suit of this nature brought to protect public interests can not be maintained by a person having no other interest than one common to all the resident taxpayers. (*Craft v. Jackson Co.,* 5 Kan. 518; *Ruthstrom v. Peterson,* 72 Kan. 679, and cases cited.)

Another reason why the contentions of the appellant can not be sustained, if it were conceded that he could maintain the action in his capacity as taxpayer, is that it does not appear that he will suffer any injuries as a consequence of the holding of the election. Acts which, though irregular and unauthorized, can have no injurious results constitute no grounds for equitable relief by injunction. (1 High, Inj., 4th ed., § 9, and cases cited; *City of Hutchinson v. Delano,* 46 Kan. 345; *Min-*

Duggan v. Emporia.

*ing and Gas Co. v. Gas and Mining Co.,* 55 Kan. 173; *Hurd v. Railway Co.,* 73 Kan. 83.)

If the result of the election is in favor of the proposed ordinances the statute (Laws 1909, ch. 82, § 31, Gen. Stat. 1909, § 1503) provides that they shall thereupon become binding and valid ordinances of the city; but when they are sought to be enforced, if any person's rights are affected thereby the courts are open for him to test the legality of the ordinances, as well as of the election by which they were adopted.

One of the grounds urged for the injunction is that the ordinances are unconstitutional because of some defect in their title, but this gives a court of equity no jurisdiction to enjoin the passage of an ordinance. No one would claim that the legislature could be enjoined from the enactment of an unconstitutional law or that the electors could be enjoined from attempting in an unwarranted manner to amend the constitution. It is a familiar principle that injunction will not lie to prevent legislative action by a municipal corporation. (*New Orleans Water Works v. New Orleans,* 164 U. S. 471; *Cape May and Schellenger's Landing R. R. Co. v. City of Cape May,* 35 N. J. Eq. 419; *State ex rel. Rose v. Superior Court of Milwaukee County,* 105 Wis. 651.) To this rule there are exceptions:

"The general rule is that a municipal corporation, in the exercise of legislative power in relation to the subjects committed to its jurisdiction, can no more be enjoined than can the legislature of the state. There are exceptions, however, to this doctrine of noninterference, as where the mere passage of the ordinance would immediately occasion, or would be followed by, some irreparable loss or injury beyond the power of redress by subsequent judicial proceedings, or where it would cause a multiplicity of suits." (22 Cyc. 890.)

That this is an attempt to enjoin legislative action is apparent. The initiative and referendum statute provides that upon the presentation of a petition in proper

form, duly certified by the city clerk, the mayor and council or the mayor and commissioners shall do one of two things: pass the proposed ordinance within ten days thereafter or call an election and submit the ordinance to the people; and upon its adoption by a majority of the electors it becomes a valid ordinance. This is legislation, either direct by the city or indirect by the people. The suit, therefore, is one to enjoin legislation. In fact the record shows that the temporary restraining order granted at the time the action was commenced restrained the city in express terms either from enacting the ordinance or calling the election. The appellant fails to make a showing of any fact which would bring his case within the exceptions to the general rule that courts will not enjoin legislative action.

The futility of the proceedings to enjoin the submission of the proposed ordinances is likewise obvious when we reflect that the people may not adopt them, and the court ought not to be called upon to anticipate conditions which may never arise. The court will not decide, at the mere suggestion of a taxpayer, whether the city has the right to sell or lease its electric-light plant, because there is no certainty that any attempt to lease or sell it will be made. The validity of such a transaction is at this time a moot question with which courts will have nothing to do. Courts will not express an opinion upon an abstract question which does not arise on existing facts or rights, or where it is sought merely to obtain the opinion of the court upon a question of law. (*Knight v. Hirbour*, 64 Kan. 563; *Crouse v. Nixon*, 65 Kan. 843; *The Queen v. The Directors of the Blackwell Railway*, 9 Dowl. Pr. C. [Eng. 1841] 558; 27 Cyc. 911.)

It follows from what has been said that the order refusing the temporary injunction must be affirmed.