## LOWRY et al. v. TOWN OF MEEKER et al.

No. 21121. Opinion Filed July, 7, 1931.

Rehearing Denied Sept. 15, 1931.

Arnold T. Fleig, for plaintiffs in error.

G. A. Paul, for defendants in error.

CLARK, V. C. J. This is an action commenced in the district court of Lincoln county by plaintiffs in error, J. P. Lowry and E. D. Walker, against the town of Meeker, Okla., for injunction against the calling of an election for the purpose of granting a franchise for sewerage disposition and sanitation purposes, and for the operation of a water supply system. Temporary restraining order was issued, and the defendant, through its attorneys, answer by way of general denial. On a hearing of said cause, judgment was rendered for the defendant dissolving the temporary restraining order and dismissing the cause at plaintiffs' cost.

Motion for a new trial was filed by the plaintiffs and overruled, exceptions saved, and the plaintiffs bring the cause here for review. Parties will be referred to as they appeared in the trial below.

The evidence in the case, as disclosed by the statement of facts, is, in substance, as follows: That the plaintiffs were residents, qualified voters, and taxpayers of the town of Meeker, and that the defendant is a municipal corporation, and, as such, had approved plans and specifications for a system of sanitary sewers in the said town, and had enacted an ordinance No. 52, by the terms of which is granted to Peter Asplund, his successors, and assigns, a right to construct, maintain, and operate the same. Copy of the ordinance is admitted in evidence; that the defendant had enacted ordinance No. 53, granting to Peter Asplund, his successors, and assigns, a right to construct, maintain, and operate a water system. A copy of said ordinance was admitted in the evidence; that, in pursuance of the two ordinances, Nos. 52 and 53, the president of the board of trustees of the town of Meeker issued his proclamation calling for an election to vote upon the granting of the franchises.

From examination of the record, the first question that presents itself to this court is the question of jurisdiction of the trial court to hear and determine this action. Counsel for the respective parties have refrained from presenting to this court the question whether the plaintiffs below, as taxpayers, had such an interest in the subject-matter of the suit to entitle them to prosecute the same; and whether or not a suit in equity will lie to enjoin the calling of said election authorized by law to be held.

They entered into an agreement in the trial of the cause below that the only question before the court was whether or not the defendant was authorized and empowered to grant said franchises. This court does not take that view of the matter. We think it is time enough to pass upon such important questions when they are reached in due course, with proper parties in the proceedings, and in proper proceedings.

In the case of City Council of the City of McAlester v. Milwee, 31 Okla. 620, 122 Pac. 173, this court, in the first and second paragraphs of syllabus, said:

"A court of equity has no jurisdiction to restrain the holding of an election, since the right involved is a political one.

"A taxpayer has not such an interest in a suit to enjoin the holding of an election to recall the mayor of a city of the first class in pursuance to the provisions of its charter as will entitle him to prosecute such suit as a complainant."

And the Appellate Court of the state of Illinois, in the case of Thompson v. Mahoney, 136 Ill. 403, held:

"An injunction will not be granted to restrain the holding of an election under clauses 11 and 12 of section 147 of the school laws of Illinois to vote upon a proposition to build a new schoolhouse; if the election sought to be held would be void if held, the remedy is to wait until the election has been held, and then to apply for an injunction to restrain the carrying out of the prop-

osition, if it is determined by such election to carry out the same."

And the Thompson v. Mahoney Case, supra, followed the case of Walton v. Develing, 61 Ill. 201, wherein that court stated:

"If the courts can dictate to the officers of the people that they shall not hold an election from fear of some imaginary wrong, then people and officers are entirely subservient to the courts, and the consequences are too fearful to contemplate. The principle, which would authorize the mighty mandate of a court of chancery in this case, would justify it in every election to be held by the people, and thus the whole administration of the government might be obstructed and all power and authority placed at the footstool of the judge."

And in the case of Roudanez v. New Orleans, 29 La. Ann. 271, it was held:

"An injunction will not issue, at the instance of the taxpayers of a municipal corporation, to prevent the officers of that corporation from holding an election * * * to enable the citizens of the corporation to vote to levy, or not levy, a certain tax on themselves. The action is premature. No right of the plaintiffs is, as yet, invaded, and the danger they seek to shun is too remote and contingent to warrant the issuance of an injunction."

And, in the case of Harbor Center Land Co. v. Council of City of Richmond (Cal.) 176 Pac. 50, the court said in the second paragraph of the syllabus:

"An injunction cannot be granted to prevent a legislative act by a municipal corporation within the scope of its powers,"

—and further announced the general rule therein that a municipal corporation, in the exercise of its jurisdiction, can no more be enjoined than the Legislature of the state.

And in the case of Stonecipher v. Putnam Mills, etc., Co., 151 Ga. 12, 105 S. E. 482, the Supreme Court of Georgia held:

That a court of equity should not ordinarily restrain the mayor and council of a municipality from passing upon an application for the privilege of erecting an electric light line in the streets, the granting or refusal of the franchise being the exercise of legislative power.

A court of equity will not enjoin the holding of an election authorized by law to be held by a municipality, since the right involved is a political one.

Judgment of the trial court is affirmed.

LESTER, C. J., and HEFNER, SWINDALL, ANDREWS, and McNEILL, JJ., concur. RILEY, CULLISON, and KORNEGAY, JJ., dissent.

RILEY, J. (dissenting). This controversy is not decided on the merits by the majority opinion, but the decision is nevertheless far-reaching. The real question sought to be determined is whether a town may let out to a private enterprise, by franchise, the right to operate a sewer system.

Article 3 (secs. 4399-4409) ch. 29, C. O. S. 1921, as amended, S. L. 1929, p. 8, c. 9, S. L. 1925, p. 91, c. 58, S. L. 1923, p. 154, c. 90, provides, a comprehensive method for construction of and payment for a sewer system by cities and towns. Section 4762, C. O. S. 1921, authorizes a board of trustees of such a town to grant a franchise under the provisions of sections 5 (a) and 5 (b), of art. 18, Constitution, for street railways, water, electric, and telephone purposes, but does not mention or authorize a sewer franchise. So the question occurs, from whence comes the authority of such a town to let this franchise? I hold to the view that this court should determine the question as to whether the right exists.

The majority opinion stops short of the main issue by determining that a court of equity cannot restrain an election authorized by law to be held, for the assigned reason that the right involved is a political one.

My view is that the decision is in error for the reason that, if the purpose of the election is not authorized by law, then the election is not authorized by law to be held.

Suppose the town of Meeker called an election to pay off the balance due on soldier compensation insurance as a whole, or as due those ex-soldiers living within the town. Could the election be enjoined? Or suppose the state of Oklahoma called an election to contribute and pay Germany's reparation war debt, would a citizen be required to sit by and see $50,000 or $60,000 of taxpayers' money paid out in holding such an election, the decision of which would be abortive on its face? I say no.

The election at bar involves a property right—not a political one. If the election were upon the selection of officers at a time when, under the law, officers were to be selected, the right would be a political one. But here the question involved is the letting of a franchise, which at common law was a crown right. The affirmative side of the issue is to let the crown right to private interest, then the next step may be by enactment of sanitary ordinances to compel resident property owners to connect with the

266

privately owned crown right or franchise sewer, and to pay for the service rendered under compulsion. Thus to levy and collect tribute in relation to property. I maintain the action partakes more of the nature of a property right than a political one.

It is true that a double-barreled case was presented to the trial court—one barrel concerning a water franchise, the other a sewer franchise. However, when such propositions are joined, a court of equity should speak freely upon that which is legal and just, and firmly upon that which is without the law. The trial court was eminently correct in refusing to enjoin the election as to the issue of letting a franchise for water purposes. Being correct as to that issue, we can well consider the sewer franchises when and if such proposed franchise is approved in the election. My principal objection to the majority opinion is the rule advanced that "a taxpayer has no such an interest in a suit to enjoin the holding of an election for the purpose of granting or denying a franchise as will entitle him to prosecute a suit in a court of equity," but that such a taxpayer must sit by, see the public treasury depleted pro tanto, by election expense, even where the whole question or issues to be submitted at such election are beyond the power of the people to grant, or where no compliance is had with the law or procedure in reference to the holding of the election so as to render the election abortive upon an issue within the power of the people to grant.