THE CITY OF HUTCHINSON *et al.* V. B. M. DELANO.

CREEK—*Apprehended Pollution*—*No Injunction.* The apprehended foul-
ing or pollution of a stream of water in the future by the sewage of
a part of a city from sewers, which have been legally, scientifically
and properly constructed, but which has not yet taken place, and of
which there is no immediate or imminent danger, and which depends
upon a contingency that may not happen, does not present a case
for an injunction.

*Error from Reno District Court.*

ON March 2, 1889, *B. M. Delano* commenced his action
against the *City of Hutchinson* and others, to perpetually en-
join them from emptying sewage, or any filth or offal of the
city, or from the houses, hotels, etc., into the waters of Cow
creek, and from polluting the waters in any way. At the
commencement of the action a temporary restraining order
was allowed by the district judge. Subsequently, the city of
Hutchinson and the other defendants filed an answer alleging
that the city was building and constructing a system of sew-
ers for a portion of the city, and that the sewers so constructed
would not be used by more than one-fifth of the inhabitants
of the city; that they intended to empty the same into Cow
creek, within the corporate limits of the city, but they denied
generally the other allegations of the petition. Trial had at
the March term of the court for 1889. The court found and
filed the following conclusions of fact:

"1. The plaintiff, B. M. Delano, is the owner of the follow-
ing-described real estate, situated in the county of Reno and
state of Kansas, to wit: The northwest quarter of section
number 33, in township number 23 south, range number 5
west of the sixth P. M., and resides thereon with his wife and
family, and they have long occupied the same as their home,
and said real estate is of the value of about $6,000, including
the improvements thereon.

"2. The defendant the city of Hutchinson is a city of
the second class, duly inaugurated under the laws of the state
of Kansas; the defendant L. A. Bigger was the duly-elected,

qualified and acting mayor, and the defendants J. B. Brown, W. E. Hutchinson, G. W. Hardy, A. M. West, H. Constant, J. V. Clymer, O. Wolcott and Frank Vincent were duly-elected and qualified and acting councilmen of the defendant the city of Hutchinson, at the time this action was commenced; and the defendants Evans and Jack were partners under the firm-name of Evans & Jack, and were contractors with the said city for the purpose of building and constructing certain sewers in said city.

"3. A natural water-course, called Cow creek, has been for time immemorial and does now plow through the ground upon which the said city of Hutchinson is now built, and on through plaintiff's said land, and is the natural drain of said land and ground.

"4. At the time of the commencement of this action, said Cow creek was a clear, running stream of water, the purity of which renders it fit for domestic purposes and stock use.

"5. Plaintiff's land, through which said Cow creek flows, is situated on said stream, about $5\frac{1}{4}$ miles below the said city of Hutchinson.

"6. On said plaintiff's land he had a pasture, fenced with posts and wire, containing about 70 acres, and through which said pasture said Cow creek runs, there being about 58 acres of said pasture on the north side of said stream and about 12 acres on the south side of said stream.

"7. Plaintiff used said pasture for his stock, including his milch cows. The milch cows are used by plaintiff and his family for the purpose of making butter for their own use.

"8. The defendant the city of Hutchinson contains a population of 15,000, and is growing in numbers.

"9. The defendants the city of Hutchinson, its officers, agents, servants, and employés, are threatening and intending to construct immediately a part of a system of sewers in said city for the use of a part of its inhabitants thereof, viz., 4,000 of such inhabitants.

"10. Said sewers are what is known as the separate system, and will not receive and carry off the storm water and ordinary street drainage, but are intended for carrying off the sewage from hotels, livery stables, private residences, privies, etc.

"11. Said city of Hutchinson, under the contract with the defendants Evans & Jack, is now actually engaged in the laying and constructing of a part of said system of sewers, which portion, when completed, will accommodate about 4,000 people.

"12. The main outlet of the sewer pipe is 24 inches in diameter—the sewage of all the people of said city.

"13. Said sewers are so constructed as to empty into said Cow creek at a point within the limits of said city of Hutchinson, and about five miles distant above plaintiff's land.

"14. Plaintiff's house, on said quarter-section of land, is north of the said stream called Cow creek at the distance of about 41 rods.

"15. The prevailing winds in this country during the summer months are from the south, and in the winter, from the north.

"16. Said water in said Cow creek flows, ordinarily, with the velocity of about a mile in about 48 minutes, and ordinarily the volume of water in said stream is about 28,000,000 to 36,000,000 gallons per day; that is to say, that amount of water will flow past a given point every 24 hours.

"17. During extraordinary and protracted drouth, the volume of water flowing in said stream is reduced, and will not exceed 15,000,000 gallons every 24 hours, but such occasions are during drouths and are infrequent.

"18. Fifteen hundred thousand gallons flowing every 24 hours is necessary to carry off the sewerage from every 1,000 population so that the water moved with the sewerage will not be offensive to the sense of sight, smell, and taste.

"19. Plaintiff's said farm is well improved and has a large barn near his house, and he has two wells, one at his house and the other at his barn; he has never and does not use the water for anything but stock water, and there is nothing disclosed by the evidence that he would have occasion to use it for any other purposes.

"20. The emptying of said sewerage into said stream will not endanger the lives of plaintiff and his family, or any one residing on said land, and will not be liable to cause such persons to have any disease.

"21. Cow creek heads about 50 miles above the city of Hutchinson, is from 25 to 50 feet wide, 1 to 2 feet deep, with sandy bottom and banks; the fall of said stream from the mouth of said sewer to plaintiff's farm is $17\frac{2}{3}$ feet; the stream is perennial, and is fed by springs as well as rain water; there are no trees on its banks between the city of Hutchinson and plaintiff's farm, and it empties into the Arkansas river a few miles below the farm of plaintiff.

"22. Under the city of Hutchinson and plaintiff's farm—indeed, under all Cow creek valley, to its mouth from the city

of Hutchinson — is a vast bed of quicksand, through which flows water from the northwest to the southeast (the direction of the creek); this water is on a level with the water of Cow creek, and on plaintiff's farm, as well as at the city or either side of said creek, for an indefinite distance, water can be reached by digging from four to six feet through a sandy loam.

"23. The city of Hutchinson and its officers are authorized by its charter and by proper ordinances to construct sewers and empty same into Cow creek, but no steps by condemnation or otherwise were taken against plaintiff or his property.

"24. Some time before the attempt to construct sewers, the city adopted a general system of sewers, including the entire city, or nearly so, so that if any part was constructed it would be in reference to a general system; said general system comprises the territory south and west of a ridge which runs northwest to southeast through said city, and which is occupied by a majority of the people of said city; no time was fixed for the completion of the entire system, but the intention was to extend it as the exigencies of the city might demand.

"25. Before the bringing of this suit, the city let a contract to Evans & Jack to construct sewers over a portion of said territory, to wit, that occupied by about 4,000 people, comprising the business part of the city, and said contractors have partly finished the same, and are still engaged in carrying out the contract. When the work is done, they are to receive $23,000.

"26. There is no negligence in the letting of said contract or any construction of said sewers, but they are being put in scientifically. The main pipes, as well as sub-mains and laterals, are glazed earthen pipes, put in with proper fall, with ample ventilators every few hundred feet, with proper flushing conveniences.

"27. There is in said city a system of Holly water-works, which at all times supplies an abundance of pure water to the city and the inhabitants of all that part of the territory which will use the sewers, and 30 gallons or more of water per head each day will be used by the people who will use said sewers, and the city will have an abundant quantity for flushing purposes.

"28. The sewerage passing into the creek will be in fluid shape, and at least 95 per cent. water. Of the general deposit, ammonia and albuminoid ammonia in the urine is the

deleterious agency, and it rapidly diffuses by being mixed with water and oxygenizes by the action of air and sunshine.

"29. From each person per day there passes three pints of urine, of which is — per cent. of ammonia and — per cent. of albuminoid ammonia.

"30. The deposit of 15,000 people into Cow creek would probably injure the water on the farm of plaintiff so as to unfit it for drinking and cooking purposes and for milch cows.

"31. The deposit of the people who will use the sewers as now constructed and in immediate process of construction will not probably injure the water of Cow creek, for either domestic or stock purposes, at the farm of plaintiff.

"32. The health and convenience of the city of Hutchinson, in that territory proposed to be sewerized by the contract of Evans & Jack, and through which flows Cow creek, require that sewers be constructed."

Thereon the court made and filed the following conclusion of law:

"The plaintiff is entitled to an injunction forever restraining the defendants from emptying the sewage of said city into said Cow creek so as to pollute and corrupt the waters thereof to the injury of plaintiff."

The defendants excepted, and bring the case here.

*Z. L. Wise*, city attorney, *Whiteside & Gleason*, and *Swigart & Wisler*, for plaintiff in error; *T. S. Brown*, of counsel.

*F. L. Martin*, for defendant in error; *Traber, Vandeveer & McNeil*, of counsel.

The opinion of the court was delivered by :

HORTON, C. J.: It appears from the findings of the court that B. M. Delano, who complains of the city of Hutchinson and its officers and employés on account of their action in constructing a system of sewers in that city, and of permitting the sewage to empty into Cow creek, lives five miles below the city of Hutchinson; that Cow creek is a clear, running stream of water, fitted for domestic and stock purposes; that it runs through the city of Hutchinson and the premises of the plaintiff below; that the city of Hutchinson is con-

structing a system of sewers for 4,000 of its inhabitants, which will carry off the sewage from hotels, livery stables, private residences, etc.; that plaintiff below does not use the water of Cow creek for any other purpose than for his stock; that he has no occasion to use it for any other purpose; that he has two wells, one at his house and the other at his barn; that the emptying of the sewage into Cow creek will not endanger the lives of plaintiff below or his family, or anyone residing on his land, and will not be liable to cause any person to have disease; that Cow creek is from 25 to 50 feet wide and 1 or 2 feet deep, with sandy bottom and banks; that the fall of the creek from the mouth of the sewer to the plaintiff's farm is 17⅔ feet; that no time has been fixed for the completion of the entire system of sewers, but the intention is to extend the same as the exigencies of the city may demand; that the sewage of 15,000 people of Hutchinson into Cow creek would probably injure the water of the farm of plaintiff so as to unfit it for drinking and cooking purposes and for the use of milch cows; that the sewage of the people of Hutchinson who will use the sewers now constructed and in immediate process of construction will not probably injure the water of Cow creek for either domestic or stock purposes at the farm of the plaintiff.

Upon these findings, the most that can be said is that there is an apprehensive pollution or fouling of the water at some future time — possibly when sewers shall have been constructed for the whole population of Hutchinson, comprising 15,000 people. But, under the findings of the court, this is not certain, only probable. Clearly, it cannot be said that any immediate danger exists to plaintiff below from the sewage into Cow creek from Hutchinson. The findings disclose that the danger is not imminent, but is wholly contingent — in the future, if certain things are done. (*Aqueduct Board v. Passaic*, N. J. 1890, 20 Atl. Rep. 54; *Coach Co. v. Horse-Car Co.*, 29 N. J. Eq. 299; *Stitt v. Hilton*, 31 id. 285; *Delaware &c. R. Co. v. Stock Yards Co.*, 43 id. 605; *Hagerty v. Lee*, 45 id. 255; *Stoudinger v. City of Newark*, 28 id. 187; *Merrifield v. Worces-*

*ter*, 110 Mass. 216; *Brookline v. Mackintosh*, 133 id. 215; *Morgan v. City of Binghampton*, 102 N. Y. 500; *Dunn v. City of Austin*, Tex. 1889, 11 S. W. Rep. 1125; High, Inj., § 742; Wood, Nuis., §§ 796, 797.)

The order for the injunction is so doubtful in its language, that really it is of little benefit to anyone. It forbids the city from emptying its sewage into Cow creek at some time in the future, if such sewage will pollute or corrupt the waters to the injury of plaintiff. It does not forbid the emptying of the present sewage from all of the sewers constructed or now being constructed. The injunction has but little force. It is unsatisfactory in its terms. It is not definite or certain. It merely declares a proposition of equity, not shown to be applicable in this case. Upon the findings of fact, we do not think that the injunction should have been granted, and therefore the judgment of the district court will be reversed, and the cause remanded, with direction to the district court to enter judgment in favor of the defendants below and against the plaintiff.

If the exigencies of Hutchinson shall demand in the future the extension or completion of its entire system of sewers, and if the sewage from all of the sewers when fully completed should foul or pollute the waters of Cow creek so as to affect in any way the rights of plaintiff below, other and different questions will then be presented. It is sufficient at this time to say, there is no pressing necessity for an injunction. The danger is contingent — not immediate and imminent.

All the Justices concurring.