Reed, J.
Sec. 1 of chap. 109, General Statutes, is as follows :—
“'When the inhabitants of any part of any county, not embraced within the limits of any city or incorporated town, shall desire to be organized into a city or incorporated town, they may apply by petition in writing signed by not less than thirty of the qualified electors of the territory to be embraced in the proposed city or incorporated town to the county court of the proper county, which petition shall describe the tend *200 tory proposed to be embraced in such city or incorporated town, and shall have annexed thereto an accurate map or plat thereof, and state the name proposed for such city or incorporated town, and shall be accompanied with satisfactory proofs of the number of inhabitants within the territory embraced in said limits.”
In February, 1891, William Heiderer, and others to the number of forty-three, made application to the county court for the appointment of commissioners in the matter of the incorporation of the town of “ Brooklyn,” a suburb of the city of Denver. Under the provisions of sec. 2 of the act, the county court appointed the plaintiffs in error commissioners, to “ at once call an election of all the qualified electors residing within the territory embraced in said limits,” etc. It is conceded and stipulated that the petition was signed by the requisite number of legal voters, and was in proper form to warrant the court in taking jurisdiction; that the appointment of the commissioners was regular; that they qualified and legally called the election.
The defendants in error, alleging themselves to be qualified voters upon and property owners in the territory sought to be incorporated, caused a complaint to be filed in the district court, alleging that the territory sought to be embraced within the proposed corporation only contained about sixteen acres of land; that the petition was obtained secretly and concealed from many interested parties ; that the lines of the proposed town were so run as to fraudulently leave out many interested parties doing business within the limits of the proposed town but residing adjacent to it, etc., etc., and asking for a temporary injunction, without notice, to restrain the commissioners from holding the election. The writ was granted, and served in the forenoon of the day on which the election was to occur. Under the advice of counsel, the injunction was disregarded, and the election held.
An affidavit was filed charging plaintiffs in error, Guebelle, Flood, Hai’gis and Snively, (four of the commission *201 ers,) with contempt of court in disregarding the writ of injunction. On the 8th day of April they were found guilty and fined $50 each. John It. Smith, counsel, was not embraced in the proceedings for contempt, but having admitted in court that he counseled and advised the parties to disregard the injunction, was fined $100.
Several errors are assigned but all resolve themselves into one inquiry, viz., whether the court had jurisdiction to intervene by injunction. We are clearly of the opinion that it had not.
It is ably urged in argument that the territory proposed to be embraced was too limited in extent to allow the incorporation, and that such limiting, under the circumstances, was fraudulent; and, from the language used in the complaint, it is apparent that fact was greatly relied upon as entitling complainants to equitable relief. There are no territorial limitations in the statute,—the language is, “any part of any county not embraced within the limits of any city or incorporated town.” If not embraced in a city or incorporated town, the qualified voters of the territory sought to be incorporated at a properly called election are the parties, and the only ones, who are to determine the expediency of such incorporation.
It is stated in the complaint, “ That the said petition presented to the county court was secretly obtained; that it was concealed from many of those living within said territory,” etc. We cannot regard this as important. Such proceedings are from their very nature more or less secret. There is no provision of law requiring advertisement or publicity; but the election could not be held secretly. The notices required by law had to be given, and by those every voter became aware of the intention to incorporate, if a majority so voted. Those from whom it is alleged to have been kept secret might, at the polls, express their dissent, not only to the incorporation but to the secret course of procedure of those instituting the proceeding. The statute is but a liberal and unlimited assertion of a fundamental principle *202 of a republican government, allowing a majority to determine whether or not a certain form of government should be adopted for certain limits of territory. The responsibility of the determination is cast upon the people in their sovereign capacity, upon those who are to bear the burdens and pay the increased expense. To have warranted the court in interposing by preliminary injunction, at the stage its powers were invoked, it must have affirmatively appeared, by proper averments in the complaint, that actual fraud was practised in either obtaining the petition, or upon the county court in obtaining the order, or upon the voters by not giving the legal notices of the election. We do not intend to be understood as saying that such averments would give the court jurisdiction, but only as saying, that without such averments the court was without jurisdiction. It is conceded that all those preliminary proceedings were regular except the vague assertion that the names were secretly secured upon the petition. No principle is better understood or more often asserted, than that “ where fraud is relied upon as the foundation for an injunction, the allegation in the bill must be of specific and definite acts of fraud and not mere general averments ; and in the absence of such specific allegations, a court of equity will not interfere although irreparable injury is alleged.” High on Injunc. § 21. Here there are no tangible allegations of fraud, nor are there any allegations of irreparable injury or facts from which such injury could be implied.
The statute provides, that when the preliminary steps are taken in accordance with its provisions, (and in this case the taking of them and their regularity are conceded,) an election shall be held and a majority shall determine the question, —positive statutory law requiring an election and providing for it, and a court of equity intervening and ordering that no election be held.
The legislative and judicial departments of government are each potent and complete within the limits of their respective spheres, and such interference at once places the *203 judicial above the legislative power of government, where it never can be, except in passing upon the constitutionality of an act.
In order to interpose by injunction the court had to predetermine the result of an election, and assume that a majority would vote for incorporation, that such majority would be made by illegal votes, and disaster to the minority result. I can find no allegation in the bill declaring that a majority of voters would favor the incorporation, or what the result of an election would be. The statute says the majority shall decide. The powers of a court of equity were invoked to prevent a decision of the question in the very manner provided by law, which must have been based, first, upon the assumption that a majority would favor incorporation,—a very unwarranted assumption if the allegations in the bill were true ; second, that such majority would be fraudulent. Had the election proceeded without judicial interference and the prophecies been fulfilled, the .remedies provided by law are adequate, or if found insufficient the aid of equity could be properly invoked. That the court of equity was without jurisdiction in the premises at that incipient stage of the proceedings, and that such jurisdiction'was assumed in direct conflict with the statute, must be at once apparent. A court of equity cannot assume in advance that the legal voters of any particular locality are going to be guilty of foolish, indiscreet and suicidal acts, and assume financial burdens they are unable to bear, and appoint itself a guardian, before the people have in any way declared any intention of doing the act. In other words a court of equity will not interpose to prevent an individual from doing a foolish act when he does it at his own expense, nor could the court interpose by injunction to prevent illegal voting. Injunctions are never issued to prevent the perpetration of a felony or misdemeanor.
It is alleged in the complaint that voters were “imported” for the occasion, who would leave after the election. If by such importation and temporary residence they became legal voters, the court was without power to restrain them. If *204 they voted in violation of laws, they could be properly punished after the offense was committed. “ Equity has no jurisdiction to prevent crimes or enforce moral obligations, nor can it interfere to prevent an illegal act merely because it is illegal.” The authorities are numerous, that in cases of this kind, where the act sought to be restrained is political and authorized by legislative enactment, courts are without jurisdiction to interfere.
Discretionary powers conferred by the legislature are not subject to the control of courts. Dillon Munic. Corp. §§ 94, 475, 906.
In Smith v. McCarthy, 56 Pa. St. 361, which was an application for an injunction, the court said, “ the power ought to be plain indeed, to authorize courts to forbid municipal elections when ordered by the legislature. It is not plain nor do we think it exists. * * * Indeed, an attempt to prevent an election by injunction against the election officers would amount to nothing,—it would be brutum fulmen.” See Holmes et al. v. Oldham et al., 1 Hughes (U. S. C. C.) 76; State of Miss. v. The President, 4 Wal. 475.
In Dickey et al. v. Reed et al., 78 Ill. 271, the court said:
“Elections belong to the political branch of the government, and are beyond the control of the judicial power. It was not designed, when the fundamental law of the state was framed, that either department of government should interfere with or control the other, and it is for the political power of the state, within the limits of the constitution, to provide the manner in which elections shall be held, and the manner in which officers thus elected shall be qualified, and their elections contested. And the political power of the state may organize municipal bodies and put them into operation by the force of enactment, or by election by the people to be thus governed, and they can provide the mode of reviewing the returns of all elections, to ascertain whether they are in accordance with the expressed will of the people. And until the courts are empowered to act, by the constitution or legislative enactment, they must refrain from interference.” *205 See, also, Darst v. People, 62 Ill. 306; People v. Galesburg, 48 Ill. 485; Walton v. Develing, 61 Ill. 201; Harris v. Shryock, 82 Ill. 119.
The court had no jurisdiction tp issue the writ. It was therefore null and void, and being so, parties were not in contempt for disobeying it. The power to punish for contempt is auxiliary and incidental to jurisdiction over the subject matter. Hurd v. People, 14 Colo. 207; Walton v. Develing (supra); Andrews v. Knox Co., 70 Ill. 65; Darst v. People, (supra); Dickey v. Reed (supra); High on Injunc. §§ 1286, 1425; Davis v. The Mayor of N. Y., 1 Duer 451; Piper v. Pierson, 2 Gray (Mass.) 120; Perry v. Mitchell, 5 Denio 537.
The decree granting an injunction and judgments for contempt against the respective parties must be reversed, and the cause remanded for further proceedings.

Reversed.