(June 29, 1916.)

JOSEPH PERRAULT, Appellant, v. JEREMIAH W. ROBINSON, Mayor, JOHN A. DAVIS, EDWIN HERRINGTON, A. V. EICHELBERGER and THOMAS FINEGAN, Members of Council of Boise City, Idaho, Respondents.

[158 Pac. 1074.]

COMMISSION FORM OF GOVERNMENT—DIRECT LEGISLATION—ELECTIONS—WRIT OF PROHIBITION—STATUTORY CONSTRUCTION.

1. The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person when such proceedings are without or in excess

of the jurisdiction of such tribunal, corporation, board or person. As *mandamus* will compel the holding of a legal, authorized, valid election when wrongfully refused, prohibition, its counterpart, will prevent the holding of an illegal, unauthorized, invalid one at the suit of a taxpayer who would be injured by the useless expense incident to holding it.

2. Statutes enacted at the same session of the legislature should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes *in pari materia*. They are to be construed together and should be so construed, if possible, as to harmonize and give force and effect to each. If, however, they are necessarily inconsistent, the statute which deals with the common subject matter in a more minute and particular way will prevail over that of a more general nature.

3. When a proper petition, bearing the requisite number of signatures of qualified electors, is presented to the council or board of trustees of any city or village in Idaho, regardless of its form of government, requesting that theaters or moving picture shows may be opened and operated on Sunday, such council or board of trustees has power to grant the relief prayed for, and, having granted it by the passage of an appropriate ordinance, the referendum provision of the commission form of government law does not apply thereto.

[As to writ of prohibition and when it lies, see notes in 12 Am. Dec. 604; 18 Am. Dec. 238; 111 Am. St. 929.]

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Charles P. McCarthy, Judge.

Appeal from judgment sustaining demurrer to and dismissing application for writ of prohibition. *Reversed.*

Charles F. Reddoch, for Appellant.

Under the provisions of sec. 6825, Rev. Codes, as amended, the city council could not of its own volition, in the absence of the proper petition, enact an ordinance allowing the opening of picture shows. Therefore, Ordinance No. 1192 is one which could not under the provisions of the Black Law be initiated by the people, as the legislature has not given the city or the people any right so to do, but has vested this

matter solely and exclusively with the council, and it is the only power which can or has the right to determine the matter.

The courts uniformly hold that where a power is expressly conferred upon the council or board of trustees, as distinguished from the city, the referendum has no application. (*Hartig v. City of Seattle,* 53 Wash. 432, 102 Pac. 408; *Long v. City of Portland,* 53 Or. 92, 98 Pac. 149, 1111; *State ex rel. Walker v. Superior Court,* 87 Wash. 582, 152 Pac. 11.)

The Black Law and amended sec. 6825, Rev. Codes, were passed at the same session of the legislature, the former being approved March 13th and the latter Feb. 15, 1911, and the rule of construction that acts passed at the same session shall be given force and effect if possible applies. (1 Lewis' Sutherland on Stat. Const., sec. 268, p. 513; *Peavy v. Mc-Combs,* 26 Ida. 143, 140 Pac. 965.)

"Where there is a special statute relating to a particular subject, the special statute will control even as against a general statute of a later date." (*Lawyer v. Carpenter,* 80 Ark. 411, 97 S. W. 662; *Boise City Nat. Bank v. Boise City,* 15 Ida. 792, 100 Pac. 93.)

If it can be contended that the referendum applies in this instance, then it has the force and effect of suspending the operation of a state statute of state-wide application. (*In re Ridenbaugh,* 5 Ida. 371, 49 Pac. 12.) The writ of prohibition will lie against the respondents in this action. (*Bellevue Water Co. v. Stockslager,* 4 Ida. 636, 43 Pac. 568; *Baker v. Gooding County,* 25 Ida. 506, 138 Pac. 342.)

"A public board acting in a *quasi*-judicial character becomes an inferior tribunal amenable to the writ whenever it exceeds its authority or exercises an authority which it does not possess." (32 Cyc. 601; *Prairie Oil etc. Co. v. Cruce,* 45 Okl. 774, 147 Pac. 152; *St. Louis & S. F. R. Co. v. Love,* 29 Okl. 523, 118 Pac. 259; *State ex rel. Cain v. Toomey,* 27 S. D. 37, Ann. Cas. 1913D, 324, 129 N. W. 563; *Speed v. Common Council of Detroit,* 98 Mich. 360, 39 Am. St. 555, 57 N. W. 406, 22 L. R. A. 842.)

J. P. Pope, City Atty., H. E. McElroy, T. J. Jones, Frank Martin, Ross W. Bates and Harry S. Kessler, for Respondents.

The court, at the suit of a taxpayer, has no power by a writ of prohibition to restrain a city council from calling a referendum election. The law firmly establishes the rule that the act of calling an election is a political act, and is beyond the jurisdiction of the courts to restrain. (*Gibbs v. McIntosh,* 78 Miss. 648, 29 So. 465; *Thompson v. Mahoney,* 136 Ill. App. 403; *Guebelle v. Epley,* 1 Colo. App. 199, 28 Pac. 89; *Meacham v. Young,* 115 Ky. 246, 72 S. W. 1092, 1094; *City of Dallas v. Dallas Consolidated St. R. Co.,* 105 Tex. 337, 148 S. W. 292; *State ex rel. Topping v. Houston,* 94 Neb. 445, 143 N. W. 796, 50 L. R. A., N. S., 227; *State v. Osborn,* 16 Ariz. 247, 143 Pac. 117; *City Council of McAlester v. Milwee,* 31 Okl. 620, 122 Pac. 173, 40 L. R. A., N. S., 576; *People ex rel. Fitnam v. Galesburg,* 48 Ill. 485; *Walton v. Develing,* 61 Ill. 201; *Darst v. People,* 62 Ill. 306; *Harris v. Schryock,* 82 Ill. 119; *Shoemaker v. Des Moines,* 129 Iowa, 244, 105 N. W. 520, 3 L. R. A., N. S., 382.)

The writ of prohibition lies to restrain only judicial acts of a court or inferior tribunals; legislative, executive or administrative acts of such bodies cannot be enjoined by such a writ.

"The writ of prohibition authorized by the constitution of Idaho is the common-law writ." (*Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246.)

The office of the common-law writ of prohibition is to prevent courts or inferior tribunals from exercising unauthorized judicial powers. (Spelling on Injunctions and Other Extraordinary Remedies, sec. 1722; *State v. Clark County Court Justices,* 41 Mo. 44; High on Extraordinary Legal Remedies, sec. 1769.)

The proceedings to be prohibited must be of a judicial character. (Shortt on Extraordinary Remedies (Heard), p. 491.)

"Prohibition will not issue to a tribunal strictly legislative in its functions." (*Spring Valley Water Works v. Bartlett,* 63 Cal. 245.)

The writ of prohibition lies only in case there has been abuse or usurpation of judicial functions. (*Mann v. Mercer County Court*, 58 W. Va. 651, 52 S. E. 776.)

The scope of the referendum provision of the Black Law is clearly indicated in the case of *Swain v. Fritchman*, 21 Ida. 783, 125 Pac. 319.

MORGAN, J.—This action was commenced by appellant, who is a resident and taxpayer of the city of Boise, for the purpose of procuring a writ of prohibition to be issued to prevent respondents, who are the mayor and members of the city council of that city, from submitting to a referendum vote a certain ordinance numbered 1192.

It appears from the application for the writ that on February 15, 1916, a petition was presented to the city council containing 3,814 names, among which were the signatures of a number of the qualified electors of the city equal to more than a majority of all the votes cast at the last preceding general election held therein, requesting that moving picture shows be permitted to be kept open and operated on Sunday; that thereafter and on March 14, 1916, the council granted the request and passed Ordinance No. 1192, providing therein that it was to take effect ten days after its approval by the mayor; that it was thereupon approved by the mayor and was duly published in the official newspaper in its issue of March 15, 1916; that after the passage of the ordinance a petition was filed with the city clerk, protesting against its enactment, containing 1,786 names, among which were the signatures of qualified electors sufficient in number to meet the requirements of sec. 25, chap. 82, Sess. Laws 1911 (p. 280), which authorizes a referendum vote to be had and a special election to be called and held for the purpose of determining whether or not an ordinance passed by the council and approved by the mayor shall become operative, and that the council, or a majority of its members, have announced their intention to call a special election and to submit said ordinance to such a vote, and that they threaten to and will do so unless restrained and prohibited from so doing; also that the cost of such an election will be approximately $1,000,

which will be an illegal and improper charge against appellant and all other taxpayers of the city, and that appellant has no plain, speedy or adequate remedy at law.

Respondents filed a demurrer to the application, which was sustained and, appellant declining to amend, judgment of dismissal of the action was entered. This appeal is from the judgment.

At the outset of the consideration of this case we are confronted with the objection that courts are without jurisdiction to prevent an election; that an election is the exercise of political power by the sovereign people which must not be interfered with, and that the remedy against one improperly or illegally held is by a proper action after the result has been declared. This question was before this court in case of *Swain v. Fritchman*, 21 Ida. 783, 125 Pac. 319, but was not decided because of the grave public importance of the questions involved in that case, and for the further reason that the objection was not made in the trial court.

Counsel for respondents have cited for our consideration a long line of authorities to the effect that courts of equity will not interfere, and injunction will not lie to restrain the holding of an election, but they do not appear to us to have great persuasive force when an attempt is made to apply them to the facts of this case and to our statutes providing for and governing the writ of prohibition.

The question here is not, as in most of the cases cited, may an election which is provided for by law be restrained, but is, have the mayor and council of Boise jurisdiction to call an election which is unauthorized by law and thereby involve the taxpayers of that city in a useless expense of approximately $1,000?

Sec. 4994, Rev. Codes, provides: "The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."

It appears to us that the writ was intended for cases of this kind and that, as *mandamus* will compel the holding of

a legal, authorized, valid election when wrongfully refused
(*Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692), prohibition,
its counterpart, will prevent the holding of an illegal, un-
authorized, invalid one at the suit of a taxpayer who would
be injured by the useless expense incident to holding it.
(See *Layton v. City of Monroe,* 50 La. Ann. 121, 23 So. 99;
*Cascaden v. City of Waterloo,* 106 Iowa, 673, 77 N. W. 333;
*Solomon v. Fleming,* 34 Neb. 40, 51 N. W. 304; *Mayor etc.
of City of Macon v. Hughes,* 110 Ga. 795, 36 S. E. 247.)

The remaining question is, have the mayor and council
jurisdiction to submit Ordinance No. 1192 to a referendum
vote?

Chap. 82, *supra,* creates a commission form of government
for such cities, having a population of 2,500 persons or more,
as may see fit to avail themselves of it. The city of Boise,
in 1912, adopted that form of government, and since then
has been and now is governed thereby.

It is provided in said chap. 82 that the people of a city
which has adopted the commission form of government shall
have, in addition to the usual and ordinary law-making
powers, the power of direct legislation by the initiative and
referendum; that the initiative shall be exercised by means
of a verified petition to be filed with the city clerk, accom-
panied by the proposed legislation, or measure, in the form
of an ordinance, requesting that such ordinance be submitted
to a vote of the people if not passed by the council; that if
such petition is signed by qualified electors equal to twenty-
five per centum of the total number of votes cast for mayor
at the last preceding general municipal election, the council
shall either pass such ordinance without alteration or call
a special election and submit it to popular vote, and that if
any other municipal election is to be held within ninety days
after the filing of the petition, the proposed ordinance shall
be submitted without alteration to be voted upon thereat; if
the petition is signed by qualified electors in number equal
to ten per centum and less than twenty-five per centum of
the total number of votes cast for mayor at the last preced-
ing general election, and the proposed ordinance be not passed

by the council without alteration before the commencing of publication of notice of the next municipal election, it shall be submitted to popular vote thereat, provided, however, that such petition must be filed at least thirty days before the date fixed for such election.

Sec. 25 of chap. 82 relates to the referendum, and provides that if, prior to the date when any ordinance shall take effect, a petition signed by qualified electors equal in number to twenty-five per centum of the entire vote cast for mayor at the last preceding general municipal election shall be filed with the clerk protesting against the enactment of such ordinance, it shall, by the filing of such petition, be suspended from taking effect and the council shall immediately reconsider such ordinance and, if it does not entirely repeal the same, shall submit it to popular vote at the next municipal election; that the council, in its discretion, may call a special election for that purpose, and such ordinance shall not take effect unless the majority of the qualified electors voting thereon at such election shall vote in favor thereof.

The eleventh legislative session, at about the time it enacted the commission form of government law, passed chap. 99, Sess. Laws 1911 (p. 342), amending sec. 6825, Rev. Codes, making it unlawful to keep open any theater or moving picture show on Sunday, but providing: ''That if a number of the qualified electors residing within the limits of any incorporated city or village equal to a majority of the votes cast at the last general election therein shall petition the council or board of trustees of such city or village to permit theaters and moving picture shows to keep open on Sunday therein, such council or board of trustees may pass an ordinance permitting theaters and moving picture shows to keep open on Sunday in such city or village during such hours and subject to such regulations as may be prescribed in such ordinance.''

The question resolves itself into this: Was it the legislative intention that the opening and operation of theaters and moving picture shows on Sunday, in cities availing themselves of the commission form of government law, should be permitted, if at all, by direct legislation according to the pro-

visions of chap. 82, or by the city council, upon petition, according to the provisions of sec. 6825, Rev. Codes, as amended by chap. 99?

Chap. 82 is a general law applying equally to all cities of the state, having the required population, that see fit to adopt its provisions and is intended to give to such cities a complete form of government including the power of direct legislation. Sec. 6825, Rev. Codes, as amended by chap. 99, while a general law in the sense that it applies to all cities and villages in the state, is special in this, that it attempts only to regulate certain specified places and means of amusement on Sunday. While chap. 82 relates to the commission form of government in general and, as an incident thereof, grants the power of direct legislation, chap. 99 specifically points out the course to be pursued by the inhabitants of cities and villages who desire theaters or moving picture shows to be opened and operated on Sunday and vests the power to grant this permission in the council or board of trustees upon receipt of a proper petition therefor.

It is said in sec. 268, Lewis' Sutherland on Statutory Construction, vol. 1: "Statutes enacted at the same session of the legislature should receive a construction, if possible, which will give effect to each. They are within the reason of the rule governing the construction of statutes *in pari materia.*" This court said in *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965: "The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes passed at the same session of the legislature; they are to be construed together, and should be so construed, if possible, as to harmonize and give force and effect to the provisions of each. If, however, they are necessarily inconsistent, the statute which deals with the common subject matter in a more minute and particular way will prevail over a statute of a more general nature." In *Hartig v. City of Seattle,* 53 Wash. 432, 102 Pac. 408, the supreme court of Washington states the rule thus: "Where general and special concurrent laws are conflicting, the provisions of the special law must obtain."

It seems to be entirely clear that chap. 99 was enacted for the government of all the people of the state of Idaho, including those who reside in cities which have heretofore adopted, or may hereafter adopt, the commission form of government. Had this not been the legislative intent, appropriate language undoubtedly would have been employed to exclude such cities from the operation of the law. It does not appear to be probable that it was the intention of the legislature that a petition signed by qualified electors equal in number to ten per centum of the votes cast for mayor at the last preceding general election may, under the provisions of chap. 82, initiate any kind of measure within the scope of direct legislation, except one to permit theaters and moving picture shows to be open and operated on Sunday, and that in case of a proposed ordinance on that subject, five times that number must petition under the provisions of chap. 99, and that, having so petitioned, and their petition having been granted and the ordinance enacted, it may be defeated or submitted to a referendum vote by request of one-half their number, pursuant to chap. 82.

It appears to us that it was the legislative intent that when a proper petition, bearing the requisite number of signatures of qualified electors, is presented to the council or board of trustees of any city or village of Idaho, regardless of its form of government, requesting that theaters or moving picture shows may be opened and operated on Sunday, such council or board of trustees has power to grant the relief prayed for and that having granted it, by the passage of an appropriate ordinance, the referendum provision of the commission form of government law does not apply thereto.

The judgment of the trial court is reversed and the cause remanded, with instructions to the trial court to overrule the demurrer and permit the defendants to answer, if they desire to do so; otherwise, grant the peremptory writ of prohibition against the defendants as prayed for in the complaint. Costs awarded to appellant.

Sullivan, C. J., concurs.

SULLIVAN, C. J., Concurring.—I concur in the foregoing opinion of Mr. Justice Morgan. The act known as the "Black Law" was held constitutional by the majority of this court in *Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692. That decision was rendered by a divided court, but the majority held that said act was a valid law, and a proper construction of some of its provisions is involved in this case.

No question is raised in regard to the passage of the ordinance referred to in Justice Morgan's opinion, and the main question presented is whether the city council is authorized, under the facts of this case, to submit said ordinance to a referendum vote of the electors of Boise at a special election called for that purpose. Counsel for respondent cite many cases which hold that an injunction will not issue to interfere with an election. Nearly all, if not every one, of the cases cited involve the issuance of a writ of injunction. My attention has not been called to a single case cited by counsel for respondents which involves the authority of a court to issue a writ of prohibition to prohibit an election that is not authorized by law. While the writ of injunction restraining a certain act is in the nature of a prohibition, it differs so essentially from the writ of prohibition that there seems considerable impropriety in the comparison of the two writs. Mr. Spelling, in his work on Injunctions and Other Extraordinary Remedies, vol. 1, sec. 40, states: "A prohibition is a remedy against an encroachment of jurisdiction, issued only from a superior court, is granted on the suggestion that the court to which it is directed has not the legal cognizance of the cause, and it is directed to the judge of the inferior court, as well as to the parties in the cause. An injunction, on the other hand, where its object is to restrain proceedings in another court, is directed only to the parties."

The same rule or law does not apply to the issuance of injunctions that applies to the issuance of the writ of prohibition. Under our statutes an injunction may issue on either of the six grounds mentioned in sec. 4288, neither of which grounds involves the jurisdiction of the court, and the writ will not be granted unless it is made to appear to the satis-

faction of the court that some substantial and positive injury will occur. Sec. 4994, Rev. Codes, declares that the writ of prohibition is the counterpart of the writ of mandate, and that it arrests the proceedings of any tribunal, corporation, board or person when such proceedings are without, or in excess of, the jurisdiction of such tribunal, corporation, board or person. The city council is a board that has certain jurisdiction, but it has no power or authority to call an election to pass upon the ordinance involved in this case. In the case at bar it is exceeding that jurisdiction by attempting to hold an election that is not authorized by law.

It appears that it will cost the city about $1,000 to hold said election, and it would be a misappropriation of the funds of the city to pay the expense of holding such an election out of the city funds.

Counsel for respondents cite in support of their contention *Gibbs v. McIntosh,* 78 Miss. 648, 29 So. 465. That case is not in point, for the reason that it involved illegality in the preliminary proceedings of an election. The election was authorized by law. In the case at bar there is no authority whatever for calling the election.

Counsel also cite *Thompson v. Mahoney,* 136 Ill. App. 403; *Fletcher v. Tuttle,* 151 Ill. 41, 42 Am. St. 220, 37 N. E. 683, 25 L. R. A. 143; *Shoemaker v. Des Moines,* 129 Iowa, 244, 105 N. W. 520, 3 L. R. A., N. S., 382; *City Council of McAlester v. Milwee,* 31 Okl. 620, 122 Pac. 173, 40 L. R. A., N. S., 576. There are exhaustive notes to both of the two last cited cases. The author to the note in the last case, on page 576, says that the Kansas supreme court points out that many decisions holding that courts of equity will not enjoin an election are from courts where the distinction between courts of law and equity is still preserved, and that they proceed upon the theory that equity has no jurisdiction of matters which do not affect rights of property, and therefore will take no cognizance of injuries affecting mere political rights, and cites *Duggan v. City of Emporia,* 84 Kan. 429, Ann. Cas. 1912A, 719, 114 Pac. 235, and says: "The court, however, says *arguendo* that since the distinctions between courts of law

and equity no longer exist in Kansas, and since the courts would not hesitate to compel by *mandamus* a county clerk to place the name of a candidate upon a ballot, no good reason appears why the same court should not, at the suit of proper parties and upon sufficient grounds, enjoin the clerk from placing the name of the candidate thereon.'' That case also involved an injunction. In the same note the author cites *Conner v. Gray,* 88 Miss. 489, 9 Ann. Cas. 120, 41 So. 186, and states that that case holds that the judiciary will interfere only where the legislature has not the power to authorize the holding of an election under the constitution, or where, having the power, it has exercised it in a way which is in plain violation of the state constitution, but that in both cases it must appear from the act itself that it is unconstitutional.

If it be held that the holding of an election that is not authorized by law cannot be enjoined or prohibited in any manner by any writ from any court, then the governor of this state might call a general election for the first day of July, or for any other time than the date authorized by law, and there would be no power whatever to restrain him from so doing, and the people of the state would thus be put to an expense of at least $100,000, the amount estimated that the holding of a state election would cost the taxpayers of this state.

The holding of many of the courts that a court has no authority to prohibit the holding of an election since the right involved is a political one is based upon the theory, as I understand it, as stated in *Lamb v. Burlington etc. R. Co.,* 39 Iowa, 333, that the court should hesitate long before adjudging that any court has the power or jurisdiction to enjoin an election to be held by the people pursuant to a public law, and the court in that case states: ''The jurisdiction of any court, or of the whole judicial department of the government, to enjoin the expression of the popular will at a time and in the manner provided by statute, may well be doubted.''

I concur absolutely with that statement so far as it applies to an election provided for by law; but, when the proposed election is not pursuant to a public law and is by implica-

tion prohibited by statute, a court will prohibit upon proper application the holding of such an election and the expenditure of the people's money in paying the expenses thereof.

The city council of Boise has no authority to call and hold an election at the expense of the people that is not authorized by statute, and, as I view it, the "Black Law" does not contemplate that the action of the city council in granting a license shall be submitted to a vote of the people. If under the "Black Law" the city council is authorized to call an election to determine whether every application for a license may be granted, it certainly would become very burdensome to the taxpayers to pay for such elections, and I do not think it was ever intended by the legislature that authority was granted to the city council to call elections in such matters. I am aware that this is contrary to the views expressed in my dissenting opinion in the case of *Kessler v. Fritchman, supra,* but since that law has been held valid, it certainly should be given a reasonable construction. It certainly was not intended that in every instance where the city council was afraid to take the responsibility of granting or refusing a license that it should be permitted to evade the responsibility and make the people pay for an election to determine the question, when such election is not authorized by law.

Should the city council conclude that moving picture shows should not be permitted on Sunday, they can repeal or set aside said ordinance.

BUDGE, J., Dissenting.—I am unable to agree with the conclusions reached in the majority opinion, and for that reason find it necessary to express my views upon the first question raised by respondent which, to my mind, is the prime and determining question in a decision of this case, namely: Does the writ of prohibition lie to enjoin the council of Boise City from calling a referendum election? The determination of this question, as I view the law applicable to this case, is conclusive against the contentions of the appellant.

My opinion is based upon the conviction which I hold that the law, firmly established by the great weight of authority,

is that *the calling of an election is a political act and beyond the jurisdiction of a court of equity to enjoin.* This is true irrespective of the fact that the calling and holding of an election would be a nullity and would place an additional burden of expense upon the taxpayers within the municipality.

The general rule is stated in 1 Spelling on Injunctions and Other Extraordinary Remedies, 2d ed., sec. 688, where the author says: "It is well settled that equity will not interfere to prevent the passage of ordinances in excess of the authority to legislate conferred by the state constitution and statutes; but will wait until some act detrimental to the individual or to the public is attempted under color of authority of ordinances, when, if it is found to be unauthorized and void altogether, or in so far as it assumes to authorize the act in question, the court will then and not before enjoin the unauthorized and illegal act." (See, also, *Gibbs v. McIntosh,* 78 Miss. 648, 29 So. 465; *Guebelle v. Epley,* 1 Colo. App. 199, 28 Pac. 89.)

In the case of *Copeland v. Olsmith,* 33 Okl. 106, 124 Pac. 33, where an action was instituted in the superior court against the mayor, city clerk and members of the city council for the purpose of procuring the issuance of a writ of injunction to prevent the holding of a municipal election, the supreme court lays down the rule which is supported by practically unanimous authority. It said: "A court of equity has no jurisdiction to restrain the holding of an election, since the right involved is a political one." This rule is reinforced by the statement of Chief Justice Fuller, sitting as a member of the United States court of appeals in the case of *Green v. Mills,* 69 Fed. 852, 16 C. C. A. 516, 30 L. R. A. 90, 25 U. S. App. 383, where that well-known jurist, among other things, said: "The court has no jurisdiction in matters of a political nature, nor to interfere with the duties of any department of government, unless under special circumstances, and when necessary to the protection of rights of property."

In the case of *City of Dallas v. Dallas Consolidated St. R. Co.,* 105 Tex. 337, 148 S. W. 292, where an ordinance was passed by the city council prescribing the rates of railway

companies, an injunction was sought to prevent the canvass-ing of returns of a referendum election on such ordinance. The plaintiff in the case contended, as in the case at bar, that the ordinance was not subject to a referendum vote. The trial court held in that case that the ordinance was not ref-erable to the people because there was no opportunity for a hearing as provided by statute. For this reason it was con-tended that the city council was without authority to canvass the returns. In holding that the writ would not lie to enjoin this political act the court said, among other things: "As elections are essentially the exercise of political power, it can-not be doubted that all action properly related thereto and necessary to their completion is from the same source, and is but the expression of the same power. The canvassing of the returns of an election is necessary to the determination of the result. It is an integral part of the election itself, without which the election is a vain proceeding; and as such inheres as a right sanctioned by the political power, as abso-lute as the right of the electorate to vote or for the election to be held. When it is declared that because of their rela-tion to the political power of the government, elections are beyond the control of the judicial power, it is meant that the whole election, including every step and proceeding neces-sary to its completion, is exempt from judicial interference, and the canvassing of the returns of an election must there-fore be held as within the rule and justly entitled to its protection."

The case of *City Council of McAlester v. Milwee*, 31 Okl. 620, 122 Pac. 173, 40 L. R. A., N. S., 576, I think, sustains my position. In that case some taxpayers filed suit against the city council to enjoin it from calling an election for the purpose of submitting to the electors of said city the ques-tion whether the mayor should be recalled. Plaintiffs con-tended that the council was without authority to call such election and that, if such election were called, it would be illegal and void. This, it will readily be seen, is a conten-tion similar to the one in the case at bar. In disposing of the case the court said: "Many applications have been made

to this court to interfere with the holding of elections of one
kind or another by the exercise of some of the high preroga-
tive writs; . . . . so far as we are aware, relief of such kind
has been consistently refused. . . . . Courts of equity are
only conversant with matters of property and the mainte-
nance of civil rights, and will not interfere to enforce or
protect purely political rights. This doctrine has been uni-
versally applied in other jurisdictions where equity has been
invoked to interfere in matters preceding an election. In
*Fletcher v. Tuttle,* 151 Ill. 41, 42 Am. St. 220, 37 N. E. 683,
25 L. R. A. 143, the supreme court of that state, after a re-
view of the authorities, reaffirmed the doctrine previously
adopted that chancery has no jurisdiction to protect purely
political rights such as those in respect to public elections,
and held specifically that an injunction could not be granted
to prevent the giving of election notices or the certifying
of nominees for districts created by an apportionment act
claimed to be unconstitutional, because such rights were
purely political and enforceable only at law.

"It had been previously held in that state that a court
of equity has no jurisdiction to restrain the holding of an
election, since the right involved is a political one. (*People
ex rel. Fitnam v. Galesburg,* 48 Ill. 485; *Walton v. Develing,*
61 Ill. 201; *Darst v. People,* 62 Ill. 306; *Harris v. Schryock,*
82 Ill. 119.)"

In *Duggan v. City of Emporia,* 84 Kan. 429, Ann. Cas.
1912A, 719, 114 Pac. 235, numerous cases are cited from
various jurisdictions supporting the doctrine as heretofore
announced. The court said, among other things: "There are,
however, other reasons why the appellant's contentions can-
not be sustained: First, it is a principle of very general appli-
cation that courts will not enjoin the calling and holding
of an election; second, injunction, being an extraordinary
remedy, will not be granted unless it be made to appear to
the satisfaction of a court of equity that some substantial
and positive injury will occur. Acts which, though irregu-
lar and unauthorized, can have no injurious result constitute
no ground for the relief." In this opinion is cited the case

of *Walton v. Develing,* 61 Ill. 201, in which it was held that the court had no power to enjoin the holding of a township election to determine whether a majority of the voters were in favor of subscribing to the stock of a railroad company, and that the defendants, who had violated the order, were not liable for contempt of court for disobedience to the writ. In the opinion of the court in which latter case, it was said: ''But the attempt to check the free expression of opinion— to forbid the peaceable assemblage of the people—to obstruct the freedom of elections—if successful, would result in the overthrow of all liberty regulated by law. The mere effort to assume such power is dangerous to the rights of the citizens. If the courts can dictate to the officers of the people that they shall not hold an election from fear of some imaginary wrong, then people and officers are entirely subservient to the courts, and the consequences are too fearful to contemplate. The principle which would authorize the mighty mandate of a court of chancery, in this case, would justify it in every election to be held by the people, and thus the whole administration of the government might be obstructed and all power and authority placed at the footstool of the judge.''

In the case of *Lamb v. Burlington etc. R. Co.,* 39 Iowa, 333, it was said: ''Without undertaking to decide the question, we simply state that we should hesitate long before adjudging that any court has the power or jurisdiction to enjoin an election to be held by the people pursuant to a public law. . . . . The jurisdiction of any court, or of the whole judicial department of the government, to enjoin the expression of the popular will at a time and in the manner provided by statute, may well be doubted. If the election when held was not according to statute, or if the statute was enacted without any constitutional authority, the courts might very well hold the election invalid. But that is quite another thing from enjoining the people from peaceably assembling and casting their votes for or against any proposition submitted to them under the color of law.''

From an examination of all of the authorities cited, and many others too numerous to here mention, we find the doctrine universally recognized that courts ought not to interfere with the freedom of elections, from motives of public policy and because it would be an unwarranted interference with a co-ordinate and independent department of government. If the city council in this case, under the allegations of the petition, may be prohibited from calling an election to obtain an expression of the popular will on this question, there is no reason on principle why any election for any purpose might not be enjoined at the instance of any party feeling himself aggrieved or in fear that such election may be detrimental to his interests.

It is given in the majority opinion as one of the reasons, and I think the main one, in justification for reversing the trial court in its holding that the court is without jurisdiction to enjoin the calling and holding of an election, that the ordinance passed by the city council of Boise authorizing and permitting moving picture shows to be open and operated on Sunday is not such an ordinance as is subject to be submitted to the electors of the city of Boise by a referendum vote, and to permit the city council to submit such ordinance to a referendum vote would incur an unnecessary expense against the municipality. This position is clearly made untenable by almost universal authority.

In the case of *State ex rel. Cranmer v. Thorson*, 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582, wherein an injunction was sought to restrain the Secretary of State from certifying to the state auditor a question as a proposed constitutional amendment contained in a joint resolution passed by the legislature, the supreme court said, among other things: "It is a familiar principle that substantial and positive injury must always be made to appear to the satisfaction of a court before it will grant an injunction, and acts which, however irregular and unauthorized, can have no injurious results, constitute no ground for relief. (1 High, Inj., sec. 9.) The party seeking an injunction must show, not only a clear legal right, but a well-grounded apprehension of immediate in-

jury. An injunction will not be granted where the injury is doubtful, or the violation of complainant's rights is merely speculative. Injury material and actual, not fanciful or theoretical, or merely possible, must be shown as the necessary or probable result of the action to be restrained. It is not sufficient to allege simply that the party will suffer irreparable injury, but he must set out the facts so that the court may determine the necessity for its intervention. (1 Beach, Mod. Eq. Jur., secs. 641, 642.) The complainant who seeks an injunction must be able to specify some particular act, the performance of which will damnify him, and it is such act alone that he can restrain. This court has no power to examine an act of the legislature generally and declare it unconstitutional. The limit of our authority in this respect is to disregard, as in violation of the constitution, any act or part of an act which stands in the way of the legal rights of the suitor before us; but a suitor who calls upon a court of chancery to arrest the performance of a duty imposed by the legislature upon a public officer must show conclusively not only that the act about to be performed is unconstitutional, but also that it will inflict a direct injury upon him.''

Touching the question of unnecessary expense incident to the holding of an election that court further said: ''Any additional burden which might result to relator, as a taxpayer, by reason of submitting this question at a general election, is too trifling, fanciful and speculative for serious consideration; and if, as claimed by him, the legislature has done nothing but submit a question to the people, it has done what it had a right to do, and any additional expense resulting from such action will be a legitimate expenditure of public money. . . . . Having failed to show that he will be injured by the intended action of defendant, the relator is not entitled to have it enjoined, or its regularity investigated in this action.''

The appellant in the case at bar fails to allege that he will suffer irreparable injury by reason of the holding of the election. The only allegation in his complaint with refer-

ence to this matter is contained in paragraph 7, wherein he
alleges that he is a resident and taxpayer of Boise City, Ada
county, and that the approximate cost of the election would
be $1,000, "which would be and is an illegal and improper
charge and expenditure against this petitioner and all other
taxpayers of said city." The only injury that appellant, as
appears from his petition, could possibly suffer would be his
proportionate share as a taxpayer of the expenses necessarily
incurred in the holding of the election which would be in-
finitesimal and contingent upon his being a taxpayer when
this claim is levied. It is apparent that the petitioner's in-
terest is not different from that common to all the resident
taxpayers within the municipality. And under no circum-
stances should a writ of prohibition issue unless the act
complained of would produce some peculiar damage to the
individual interests of petitioner different from that sus-
tained by other members of the municipality. (*Amusement
Syndicate Co. v. Topeka,* 68 Kan. 801, 74 Pac. 606; *Craft v.
Jackson County Commrs.,* 5 Kan. 518.)

If for no other reason, in my opinion, the foregoing alle-
gation in appellant's complaint is wholly insufficient to war-
rant this court's reversing the action of the trial court in
refusing to enjoin the election and in directing the trial
court to issue the writ of prohibition prayed for in appel-
lant's complaint. (See 1 High, Inj., 4th ed., sec. 9, and cases
cited; *City of Hutchinson v. Delano,* 46 Kan. 345, 26 Pac.
740; *Coffeyville Mining etc. Co. v. Citizens' Natural Gas etc.
Co.,* 55 Kan. 173, 40 Pac. 326; *Hurd v. Atchison etc. R. Co.,*
73 Kan. 83, 84 Pac. 553.)

If the city council has authority under the Session Laws
of 1911, p. 280, to call a special election for the purpose of
determining whether or not an ordinance passed by the coun-
cil and approved by the mayor shall be operative, upon a
proper petition as required under the provisions of the Ses-
sion Law, *supra,* and the ordinance shall be adopted by the
votes of the electorate of the city, the petitioner would have
no just cause of complaint. And even if the voters reject
the ordinance permitting moving picture shows to be opened

and operated on Sunday, and the court ultimately holds that a special election for this purpose cannot be called, the petitioner, according to his own showing, will not be injured.

In the case of *Duggan v. Emporia, supra,* the court said: "The futility of the proceedings to enjoin the submission of the proposed ordinances is likewise obvious when we reflect that the people may not adopt them, and the court ought not to be called upon to anticipate conditions which may never arise. The court will not decide, at the mere suggestion of a taxpayer, whether the city has the right to sell or lease its electric-light plant, because there is no certainty that any attempt to lease or sell it will be made." Nor should the court in the case at bar issue the extraordinary writ of prohibition in anticipation of what the electors of the city of Boise may do touching the matter of permitting moving pictures to be operated on Sunday. For aught this court knows, the citizens of Boise may, at the election, express a willingness to permit moving picture shows to be operated on Sunday.

The learned Chief Justice in his concurring opinion makes the observation that his attention has not been called to a single case which involves the authority of the court to issue a writ of prohibition to prohibit an election that is not authorized by law. In the case of *People v. Board of Election Commrs.,* 54 Cal. 404, an application for a writ of prohibition was sought for the purpose of enjoining the board of election commissioners of San Francisco in ordering an election for fifteen freeholders to prepare and propose a charter to be submitted to the voters of the city and county as provided in sec. 18, art. 11, of the constitution of California. Notice was duly given for the holding of that election. It was charged in the petition for the writ of prohibition that the action of the board of election commissioners in making the order for the election was in excess of the powers and jurisdiction of said board and in violation of the constitution and laws of the state, and that if said election were allowed to proceed, the expense thereof would exceed the sum of $30,000, all of which would be drawn out of the treasury of the city. The petitioner for the writ alleged that he was a

taxpayer of said city, and as such applied for the writ. On the return day defendant appeared and filed a demurrer to the petition upon the ground that the action complained of by the board of election commissioners in calling the election was not, nor was any part thereof, in any sense a judicial proceeding or the subject of examination by the court through a writ of prohibition. The court held that the demurrer was well taken, and it was sustained. In the course of its opinion the court said that the action of the board of election commissioners complained of and sought to be reached by prohibition was not judicial in its nature.

Sec. 4994, Rev. Codes, contains the same provisions as sec. 1102 of the Code of Civil Procedure of California. From a reading of sec. 4994 and from a careful consideration of the majority opinion, it might appear that a wider scope could be accorded to the writ of prohibition as provided by statute than that comprehended in the common-law writ, as the statute provides that the writ is the counterpart of the writ of mandate, and arrests the proceedings of any board acting without or in excess of its jurisdiction. This statutory provision, however, has not broadened the scope of this writ, if we are to accord any weight to the interpretation placed upon it by the supreme court of California. In the case of *Maurer v. Mitchell,* 53 Cal. 289, the court said: "The word 'counterpart' as employed in the statute is designed to illustrate the operation of the writ of prohibition when issued in a proper case, but it is not intended to enlarge or add to the class of cases in which it may be resorted to." Under sec. 4994, the action which it is sought to prohibit must still, as at common law, be judicial in its nature.

In the case of *Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246, this court said that "the writ of prohibition as authorized by the constitution is the common-law writ." And the office of the common-law writ of prohibition is to prevent courts or inferior tribunals from exercising unauthorized judicial powers. (Spelling on Injunctions and Other Extraordinary Remedies, sec. 1722; *State v. Clark County Court Justices,* 41 Mo. 44.)

A city council is not a judicial body, and does not exercise judicial or *quasi*-judicial powers under the laws of this state in calling an election, and therefore cannot be legally enjoined by writ of prohibition. (*People ex rel. Dougan v. District Court,* 6 Colo. 534; *People v. Board of Election Commissioners, supra.*)

The legitimate scope and purpose of the writ of prohibition is to restrict inferior courts within the limits of their own jurisdiction, and it cannot be extended to officers, boards or tribunals whose functions are not judicial. The proceedings to be prohibited must be of a judicial character, and prohibition should not be granted in respect to any proceedings belonging to the legislative or executive department of government. (Shortt on Extraordinary Remedies, 440; *Spring Valley Waterworks v. San Francisco,* 52 Cal. 111.)

Whether the restraining order in this case be a writ of prohibition or of injunction the effect will be identical, and under the great weight of authority neither writ may be properly issued, for the reason that it is an unwarranted and unlawful interference by one branch of the government with the prerogatives of another affecting a purely political act.

It is true that the Governor of this state could call an election on the first day of July, or any other date not authorized by law, and it is equally true that he could issue a proclamation disbanding the state militia in time of war. Yet, if neither of these acts was judicial or *quasi*-judicial, it could hardly be contended that the writ of prohibition would be the proper remedy.

I heartily concur in the statement of the Chief Justice that it was never the intention of the legislature to authorize a municipality to call an election to grant a license. Nor do I think licenses are granted in this manner, but in pursuance of ordinances legally passed by municipalities. The authority of the city council to call an election is one thing, and the validity of the election so called and held is quite another.

In the case at bar the petitioner alleges "That the council of said city or a majority thereof, as plaintiff and petitioner is informed and believes and upon such information and be-

lief alleges, have announced their intention to submit at their next regular meeting, to be held on March 21, 1916, . . . . Ordinance No. 1192, . . . . to a referendum vote for approval or rejection by the people, at a special election to be called and held within forty days from the ordering thereof, and threaten to and will do so unless restrained and prohibited by the order of this honorable court.'' It will be observed that the council has taken no steps looking to the holding of an election. Thus it has not nor is it acting in excess of its jurisdiction. And even though it be conceded that the calling and holding of an election is a *quasi*-judicial act—which it is not—the remedy by writ of prohibition could not be resorted to.

Courts have the power and it is their duty to determine, whenever the question is properly raised and wherein the substantial rights of any citizen are involved, whether an ordinance has been legally enacted. But, with all deference to the majority opinion, I am unable to reach the conclusion that this court or the district court has jurisdiction to enjoin by the extraordinary writ of prohibition the action of the city council in submitting to the electors of a municipality for their approval or rejection any ordinance. Such prohibition would, as heretofore stated, be an unwarranted interference with a co-ordinate branch of the government in the performance of a purely political act within its rightful limits.

Having reached the conclusion that the trial court as well as this court is without jurisdiction to issue the writ of prohibition, it therefore becomes unnecessary for me to express my views on the other question submitted upon the hearing of this cause. In my opinion the action of the trial court in refusing to issue the writ of prohibition should be affirmed.