## J. W. WATTS v. LENOIR AND BLOWING ROCK TURNPIKE COMPANY.

### (Filed 23 March, 1921.)

**1. Constitutional Law—Statutes—Private Acts— Corporations— Amendments—Turnpikes—Roads and Highways—Counties—Leases.**

A turnpike company having powers under its charter, and also under a special act of the Legislature, acquired from the county commissioners a lease for fifty years to a certain length of a public road, to be used as a part of its turnpike road, with the right to place one or more toll gates thereon, before the recent adoption of the amendments to our State Constitution, and improved the same by the expenditure of large sums of money: *Held,* an act of the Legislature, passed since the adoption of the constitutional amendment, that prohibited the turnpike corporation from continuing the existence of a toll gate at or near a certain terminus of its road, necessary to the full enjoyment of the returns therefrom, and permitting a part thereof to be used toll free, is invalid under Art. VIII, sec. 1, of the Constitution as amended, which requires that the General Assembly shall provide by general laws for amending, etc., charters of all corporations, expressly stating turnpike companies, and excluding them from the exceptions to the general law.

**2. Same—Vested Rights.**

The recent amendment to our Constitution, by substituting a new section for Art. VIII, sec. 1, prohibiting the Legislature, with certain exceptions, from creating or amending the charters of corporations, by special act, but requiring this to be done under a general law, renders invalid a later special act of the Legislature, attempting to amend the charter of a turnpike corporation, affecting rights theretofore acquired, and also acquired under special statutes, enacted before the adoption of the constitutional amendments.

**3. Same—Tolls.**

Where a turnpike corporation has acquired certain rights under statute authorizing a lease of a public road from a county, and has expended thereunder for improvements thereon large sums of money, a subsequent amendatory act which, by restricting the placing of a toll gate at a certain place, deprives the company of its right to collect a substantial part of its revenue from the road, impairs and destroys a vested property right, and is unconstitutional and invalid.

9—181

**4. Same—Eminent Domain.**

A statutory amendment to a former statute, which destroys and sensibly impairs vested property rights acquired under the former statute, or which attempts to transfer them either to the public, or other, except under the principles of eminent domain, and upon compensation duly made, is unconstitutional and invalid.

**5. Same—Regulation of Tolls.**

Where a turnpike company has dedicated its property to a public use, the principles applying to *quasi*-public corporations in relation to the regulation of rates of tolls through properly constituted agencies generally apply.

CIVIL ACTION, heard by agreement of parties, before *Harding, J.,* at Marion N. C., September, 1920.

The action is instituted by plaintiff, a taxpayer, citizen, and resident of Caldwell County, living on the line of the defendant's road within the prescribed limits, and necessarily paying toll for travel thereon, in behalf of himself and all others in like case, and also a stockholder of defendant company, to compel defendant, an incorporated turnpike company, from maintaining toll gates, and enforcing the collection of toll on that portion of the road from Lenoir, N. C., eight miles out towards and beyond the town of Patterson, N. C.

On the pleadings, affidavits, and evidence offered the court finds the facts and entered judgment denying relief in terms as follows:

"This cause coming on to be heard before me at chambers in Marion, North Carolina, by agreement of the parties plaintiff and defendant, and being heard upon the pleadings, exhibits, and affidavits offered as evidence in the case, and admissions made by counsel at the argument, the court finds the following facts:

"1. That in the year 1903 the General Assembly of North Carolina passed an act authorizing the board of county commissioners of Caldwell County to lease, or otherwise contract and dispose of, to any turnpike company or person, a stretch of road six and one-half to seven miles in length, and leading from Lenoir to the ford of the Yadkin River at the old Baptist and Advent churches, reference to said act is hereby had, see chapter 473 of Public Laws of 1903.

"2. That on 6 September, 1901, the board of county commissioners of Caldwell County, under and by virtue of authority contained in the act referred to, leased to the Lenoir and Blowing Rock Turnpike Company, a corporation which had been chartered and organized under the laws of North Carolina, the said stretch of road mentioned in finding of fact No. 1, for the term of fifty years, a certified copy of lease so made to said turnpike company is on file in the papers in this case, and reference to the same is hereby had as a part of this finding of fact.

WATTS *v.* TURNPIKE CO.

"3. That under said lease said turnpike company immediately took possession of said road, which was then in bad condition, and at once began to improve and repair it, such repairs consisting in laying down of macadam on and along the said road, cutting down the grade, and, where it became necessary by changing the location of the road for a considerable distance, that is to say: built on a new and better grade from the foot of Warrier's Gap on the south side of the foot of said gap to the north side, a new road for some distance entailing the expenditure of a large sum of money extending over a period from the date of the lease up to the present time, which would not be less than from $40,000 to $50,000, so expended.

"4. That after said Lenoir and Blowing Rock Turnpike Company took over the said stretch of road, it maintained a toll gate over the same, and has continued to do so up to the present time, collecting such tolls as it was authorized to collect from subjects of toll passing over said road.

"5. That during the year 1911 the General Assembly of North Carolina amended the act of 1903, before referred to, by permitting the said company to maintain one or more toll gates, and the right to declare dividends, repealing that portion of the act restricting the location of a toll gate and fixing the tolls over said road.

"6. That on 28 January, 1911, the General Assembly of North Carolina passed an act ratifying, confirming, and approving the charter of the Lenoir and Blowing Rock Turnpike Company, and all proceedings and acts thereunder, and in pursuance thereof made all such acts valid. Reference is hereby made to said act, chapter 62, Public-Local Laws 1911.

"7. That the General Assembly of North Carolina, at its special session in August, 1920, passed the following act:

" 'H. B. 466, S. B. 362, An act to amend chapter 62, Public-Local Laws, session one thousand nine hundred and eleven. The General Assembly of North Carolina do enact:

" 'SECTION 1. That chapter 62, Public-Local Laws of North Carolina, session one thousand nine hundred and eleven, be amended by adding at the end of section three of said chapter the following: "The said company shall not be allowed to maintain any toll gates thereon nearer than eight miles from the corporate limits of the town of Lenoir, nor shall it increase its tolls over those charged at present."

" 'SEC. 2. That this act shall be in force from and after its ratification.

" 'In the General Assembly read three times, and ratified this 26 August, 1920.'

"8. That the charter of the Lenoir and Blowing Rock Turnpike Company provides, among other things, that the company has the right to maintain two or more toll gates, at desirable points, between Lenoir and Blowing Rock, N. C., and by the amendment before referred to, said act of 1903, one or more toll gates is allowed to be maintained by said company over the stretch of road from Lenoir to the ford of the Yadkin River at the Baptist and Advent churches.

"9. That the amount of tolls which are taken in from subjects of toll passing over this stretch of road from Lenoir to the ford of the Yadkin River at the Baptist and Advent churches amounts annually to a large sum, which, together with toll defendant would be unable to collect on through travel from Lenoir to Blowing Rock, and from Blowing Rock to Lenoir, if its toll gate be moved as required by the act of August, 1920, would entail a loss upon the defendant in tolls of approximately $4,000 to $5,000 per annum.

"10. And that to maintain and keep in good state of repair said stretch of road it will take several thousand dollars a year.

"11. That the effect of the act of August, 1920, if any, upon the Lenoir and Blowing Rock Turnpike Company would be to repeal by implication the right of said company to maintain a toll gate between Lenoir and the ford of the Yadkin River at the Baptist and Advent churches, and remove said toll gate about one mile up the mountain from Patterson, N. C., and that if said company is denied the right to maintain said toll gates as at present located, and to collect tolls from subjects passing over and upon said road, that it will entail a loss of several thousand dollars to said company, and said company would not have any revenue from this portion of the road with which to keep up and maintain the same, where travel on said portion originated thereon, and went in the direction of Lenoir, N. C., or where the travel originated for points east and concluded before reaching the first gate.

"12. That owing to the expenditure of a large sum of money on the part of the Lenoir and Blowing Rock Turnpike Company upon said road, including the purchase of land for a new roadbed at Warrier's Gap, making grades and otherwise improving said road represents a large vested interest of said company.

"13. That if said toll gate now maintained along the line of said road is required to be taken down, and the company denied the right to collect tolls, that the effect of this will be to leave the company without any means derived from this portion of the road with which to keep it up, as set out in paragraph 11 above, but would still leave the company in a position of responsibility to keep up and maintain the same, and be responsible for any liabilities resulting from a failure of the performance of this public duty.

"14. That if said toll gate is removed it will at once open up the road to a portion of the inhabitants of Caldwell County and others to use free this stretch of road, while other persons and subjects of toll living north of the toll gate between Patterson and Blowing Rock would be required to pay toll.

"Upon the foregoing finding of facts, the court is of the opinion that the act of the Legislature passed by the General Assembly of North Carolina, special session 1920, before herein referred to, is unconstitutional and void:

"It is therefore considered and adjudged that the relief sought by the plaintiff be and the same is hereby denied. It is further adjudged that the plaintiff pay the costs of this action, to be taxed by the clerk. By consent, this order was signed out of the district on 27 October, 1920.

WM. F. HARDING,
*Judge Presiding.*"

Plaintiff excepted and appealed.

*Mark Squires and W. C. Newland for plaintiff.*
*Council & Yount, Lawrence Wakefield, and H. P. Grier for defendant.*

HOKE, J., after stating the case: It appears from the legislation and findings of fact pertinent to the inquiry and fully embodied in the judgment that defendant is a corporation having the right under the statutes applicable to construct and maintain a turnpike road from Lenoir, N. C., to Blowing Rock and beyond; to operate stage lines thereon; to charge and collect tolls of travelers using the same; and are allowed to establish two or more toll gates along the route at points considered desirable for the convenient and efficient collection of tolls. That a part of this route from Lenoir for six miles or more to the ford of the Yadkin River, near Patterson, N. C., the road is held by a lease of fifty years duration from 6 September, 1909, said lease being made by the county commissioners under legislative authority expressly conferred by statute, and that soon after taking said lease defendant company, at great cost, changed the grade and otherwise improved said road and the tolls of persons living along this portion of the road when traveling to Lenoir and otherwise amounts to several thousand dollars per year. That one of the toll gates established under the laws applicable and necessary to the efficient collection of tolls is on this portion of the route and about four miles from Lenoir. That at the special session of 1920 the General Assembly passed a special act purporting to amend chapter 62, Public-Local Laws of 1911, the same containing in effect the chartered rights of the company, and which provided that the statute referred to be amended by adding to the end of section 3 the following: "The said

company shall not be allowed to maintain any toll gates thereon nearer than eight miles from the corporate limits of Lenoir, N. C., nor shall it increase its tolls over those charged at present?" It further appears that the force and effect of this statute, if the same is allowed to prevail, will be not only to deprive the company of its right to maintain its toll gates as the act of incorporation provided, but in its practical and necessary operation will disenable it from collecting any tolls of persons using only that portion of the road for eight miles out from Lenoir, and this being true, we are of opinion that the act is void as contrary to certain recent amendments to our Constitution, which inhibit any special legislation in amendment of charters of this kind, and that in any event such an amendment would be declared invalid as impairing and destroying vested property rights of the company contrary to the law of the land.

In reference to the first proposition, it will be recalled that with the view of relieving the Legislature of the time and work not infrequently expended on local measures which could as well be accomplished under general laws, and allowing time for fuller deliberation on matters of public moment, the General Assembly of 1915 submitted several amendments to the Constitution, which were ratified by vote of the people in 1916, and became effective as part of the organic law 10 January, 1917. *Kornegay v. Goldsboro,* 180 N. C., 441; *Mills v. Comrs.,* 175 N. C., 215; *Reade v. Durham,* 173 N. C., 668.

In a large number of these designated subjects, appearing principally in Art. II, sec. 29, of the Constitution, among them measures which authorize the laying out, opening, altering, maintaining or discontinuing highways, etc., the General Assembly is expressly prohibited from passing any "local, private, or special act or resolution," except to repeal same, and the section provides further that "any local, private, or special act or resolution passed in violation of this section shall be void."

In pursuance of the same purpose and policy, and by amendment submitted, ratified, and becoming effective at the same time, sec. 1 of Art. VIII of the Constitution was stricken out and a new section substituted. This Art. VIII is entitled "Corporations other than municipal," and the original and substituted sections are as follows:

Section 1, as it originally appeared: "Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where in the judgment of the Legislature the object of the corporation cannot be attained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed."

And the substituted section is as follows: "Section 1. Corporations under general laws. No corporation shall be created, nor shall its char-

ter be extended, altered, or amended by special act, except corporations for charitable, educational, penal, òr reformatory purposes that are to be and remain under the patronage and control of the State; but the General Assembly shall provide by general laws for the chartering and. organization of all corporations, and for amending, extending, and forfeiture of all charters, except those above permitted by special act. All such general laws and special acts may be altered from time to time or repealed; and the General Assembly may at any time by special act repeal the charter of any corporation."

From a perusal and comparison of the two sections, and a proper consideration of authoritative cases in which same have been interpreted and applied, it is clear, in our opinion, that, except for purposes of absolute repeal which is retained throughout as essential to ,the proper exercise and enforcement of the police powers of Government, and except, also, in the instances expressly designated in the section of "Corporations for charitable, educational, penal, or reformatory purposes that are to be and remain under the patronage and control of the State," this. section withdraws from the General Assembly any and all power by special enactments to create, extend, alter, or amend the charter of all private business corporations, and all *quasi*-public corporations, such as railroads, incorporated turnpike or toll roads, bridge companies, and the like, and also those corporations which while having at times and to some extent powers appertaining to government are in fact and in truth business corporations for the purpose principally of promoting. private interests, as in *Southern Assembly v. Palmer,* 166 N. C., 75; *Com'rs. v. Webb,* 160 N. C., 594, etc.

For reasons stated in the fully considered case of *Kornegay v. Golds- boro,* 180 N. C., 440, the inhibitory features and effect of these amend- ments do not apply or extend to municipal or *quasi*-public corporations, such as counties, cities, towns, and other recognized governmental agen- cies, other than changing the names of cities and towns, and creating or changing lines of townships and schools and districts. Apart from these, however, and as to corporations above stated, special legislation is now prohibited, and the act of 1920, upon which the plaintiff rests his claim for relief, coming directly within the constitutional provision, has been properly held invalid. *Kornegay v. Goldsboro, supra; Mills v. Com'rs.,* 175 N. C., 215; *Board of Education v. Board of Com'rs.,* 174 N. C., 47. And though the attempted amendment in question here had. been passed in accord with constitutional methods, that is, under the provisions of a general law, it could not be upheld for the reason that it destroys or impairs vested rights of property. True, that in order to relieve the State and its Legislature from the restrictions imposed by the principles of the *Dartmouth College case,* and which were such as to

threaten, and in their subsequent application at times interfere with, the efficient administration of well ordered government, this Art. VIII, in sec. 1, reserves to the General Assembly the power to amend or repeal all corporate charters, and while the right of repeal is at all times absolutely with the Legislature, the power of amendment as contained in this reservation is by no means unlimited. In order to its proper exercise, the proposition must be germane or in some way promotive of the principal corporate purpose as contemplated by the charter or in reasonable regulation of its methods, and the decided cases are agreed in the position that an amendment which destroys or sensibly impairs the vested property rights of the company, or which attempts to transfer them either to the public or other except under the principles of eminent domain and upon compensation duly made, must be held invalid. The principle, as stated, was fully recognized by this Court in *R. R. v. Comrs.,* 108 N. C., 56, and is in general accord with the authorities on the subject. *Shields v. Ohio,* 95 U. S., 319; *Comrs. v. Power Co.,* 104 Mass., 446; *Commonwealth v. Essex Co.,* 79 Mass., 239; *City of Detroit v. Howard Turnpike Road Co.,* 43 Mich., 140; Clark on Corporations, p. 212; 26 R. C. L., p. 1399; Turnpike and Toll Roads, sec. 5; 10 Cyc., p. 1087.

In *R. R. v. Comrs., supra,* it was attempted, under guise of an amendment and by a proposed popular vote, to divert a municipal subscription made to a designated railroad route, after said subscription had been contracted to another and in part earned, and in disapproving the measure the Court held: "The provision in the Constitution (Art. VIII, sec. 1) which reserves to the General Assembly the power to alter or repeal acts incorporating companies does not authorize the enactment of a statute which, under the pretense of protecting a public interest, or exercising an acknowledged police power, appropriates the corporate property to the public use."

In *Commonwealth v. Essex, Chief Justice Shaw* states the principle as follows: "The rule to be extracted is this: 'That where, under power in a charter, rights have been acquired and become vested, no amendment or alteration of the charter can take away the property rights which have become vested under a legitimate exercise of the powers granted.' "

And, speaking generally to the position in *Shields v. Ohio, supra, Associate Justice Swayne* said: "The power of alteration is not without limit, the alterations must be reasonable, they must be made in good faith, and be consistent with the scope and object of the act of incorporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration. Beyond the sphere of the reserved powers, the vested rights of corporations in such cases are surrounded by the same sanction and are as inviolable as in other cases."

---
PUSEY *v.* R. R.
---

Doubtless, as in other cases of *quasi*-public corporations who have ·dedicated their property to public use, the rates of toll through properly ·constituted agencies may be and are subject to reasonable regulation. It was so held in the last case cited of *Shields v. Ohio,* and the principle is fully established with us. But such a principle gives no sanction to the case presented here. Where the proposed act in its practical operation takes from defendant company, and without compensation, eight miles of its road, in which they have a chartered right to collect tolls, .and which they hold by a lease for fifty years under legislative authority, and on which they have done a large amount of costly work.

In any event, therefore, such an act is in clear conflict with the con-stitutional guarantees protecting vested rights of property, and the judg--ment of his Honor declaring same invalid must be
Affirmed.